FRANK B. RYAN ET AL. *v.* STELLA KASASKERIS

[No. 356, September Term, 1977.]

*Decided December 13, 1977.*

The cause was argued before GILBERT, C. J., and WILNER and COUCH, JJ.

*Steven A. Charles,* with whom were *Hardwick, Tripoda·& Harris* on the brief, for appellants.

*James S. Brocard* for appellee.

WILNER, J., delivered the opinion of the Court.

The issue before us is a narrow one, but with important and widespread consequences. We are asked to determine whether an injury sustained by a domestic servant, whose transportation expenses are reimbursed by her employer, arises out of and in the course of her employment, and is therefore compensable under the Workmen's Compensation Act, if it occurs while she is in transit to or from her employer's home.

The question comes to us because of an unfortunate episode in the life of Stella Kasaskeris. Ms. Kasaskeris, appellee here, was employed as a domestic servant in the home of Frank B. Ryan. She worked three days a week at a compensation of $20.00 a day. When she was first employed, she was unfamiliar with the public transportation system, and also apparently with the English language; and so Mrs. Ryan drove her to and from work. Each day that appellee worked at the Ryan home, Mrs. Ryan would pick appellee up at her home in Wheaton, transport her to the Ryan home in Chevy Chase, and, in the afternoon, drive her back to Wheaton. By automobile, this was a 15- to 25-minute trip, one way, depending on traffic.

After several months, Mrs. Ryan became disenchanted with this arrangement, and, through a mutual friend, advised appellee that she (Mrs. Ryan) preferred not to drive appellee to and from work any longer. At this point, appellee appeared to be somewhat more comfortable with the public transit system, so the friend suggested that, in lieu of driving appellee, as before, Mrs. Ryan pay the cost of public

transportation, which was estimated to be $3.80 per week.[1] This was agreed to by both sides; thenceforth, appellee travelled to and from the Ryan home by public transit bus, and Mrs. Ryan added $3.80 to her compensation, paying her $63.80 per week for the three days' work.

A complicating feature in this story is the fact that the nearest bus stop was about two blocks from the Ryan home, and this leg of the trip appellee walked.

The tragedy struck on January 28, 1976, at which time the new arrangement had been in effect for about eighteen months. Appellee had alighted from the bus, walked the two blocks, and was nearly across the street in front of the Ryan home when she was struck by a car. Her injuries were substantial. Appellee filed a claim with the Workmen's Compensation Commission, which disallowed it on the ground that she did not sustain an accidental injury arising out of and in the course of employment. On appeal, the Circuit Court for Montgomery County reversed the Commission's decision, and the employer-insurer has appealed from that action.

Three basic principles are involved in the resolution of the issue:

FIRST: An injury is compensable under the Workmen's Compensation Act only if it arises "out of and in the course of" the employment.[2]

SECOND: An injury occurring while an employee is going to or returning from his place of employment is generally not compensable because it is not considered to have arisen out of and in the course of employment.[3]

---

1. As it turned out, the actual fare was only $3.00 per week, rather than $3.80. We do not deem the mistake, amounting to $.13 a trip, to be of any consequence.

2. *Md. Ann. Code* art. 101, § 15.

3. Tavel v. Bechtel Corp., 242 Md. 299 (1966); Pariser Bakery v. Koontz, 239 Md. 586 (1965).

320

THIRD: Where, however, the employer arranges for, provides, or, in some instances, reimburses the employee for the expense of, transportation to and from the jobsite, that journey may be considered as part of the employment, thereby making an injury occurring during the journey compensable.[4]

The precise question is whether, and to what extent, the circumstances of appellee's employment and injury caused her to fall within the protective ambit of the third principle. To answer the question, we must consider the true scope and rationale of the principle, as gleaned from the circumstances of its prior application, the nature of appellee's employment, and her status at the time the injury occurred.

The genesis of the third principle, in Maryland, was *Harrison v. Central Con. Co.,* 135 Md. 170 (1919). The claimant there lived in Baltimore City. He was employed by Central Construction Company to work on a construction project at the Edgewood Arsenal in Magnolia; and it was part of his employment contract that the employer would furnish him with free transportation between Baltimore and Magnolia. The employer arranged with the Pennsylvania Railroad for special "work trains" to carry the laborers between the two points, and the claimant, along with his fellow workmen, was issued a "button" that entitled him to ride the train without charge.

One day, the claimant boarded what he thought, and was told, was the "work train." He soon discovered that he was on the wrong train — a regular passenger train that did not stop in Magnolia. He was then told to get off that train at Back River and wait for the "work train." This he did, and it was while boarding the second train that he was injured.

On these facts, and relying on out-of-State cases, the Court

4. Watson v. Grimm, 200 Md. 461 (1952).

of Appeals inaugurated the "free transportation" rule in Maryland with this statement (135 Md. at 177):

> "When the injury occurs before the beginning or after the termination of work there are two general rules applicable to the question as to whether it arose out of and in the course of the employment. The first is that an employee, while on his way to work, is not in the course of his employment. The second is that where the workman is employed to work at a certain place, and as part of his contract of employment there is an agreement that his employer shall furnish him free transportation to or from his work the period of service continues during the time of transportation, and if an injury occurs during the course of transportation it is held to have arisen out of and in the course of employment."

Upon this theory, the Court held that it was error for the lower court to have ruled, as a matter of law, that the injury did not arise out of and in the course of claimant's employment.[5]

The Court next dealt with this doctrine in *Miller v. United Rwys. & Elec. Co.,* 161 Md. 404 (1931). The claimant's husband, for whose death she sought compensation, was employed by United Railways to clean streetcars at the West Baltimore Street carbarn between the hours of 7:00 P.M. and 6:00 A.M. He, and all other employees, had passes entitling them to free transportation on the company's streetcars, and the decedent regularly rode the streetcars to go to and from work.

The employee's weekly salary was due on Friday, and he was able to pick it up at any one of four carbarns in the city, including the one where he worked. He found, however, that the "pay car" did not arrive at the West Baltimore Street carbarn until Friday afternoon; and, rather than wait, he took the streetcar to another carbarn where he could get his pay

---

5. The case was remanded for a new trial, at which the order of the State Industrial Accident Commission awarding benefits to the claimant was affirmed. In a second appeal, the Court of Appeals also affirmed. Central Construct. Co. v. Harrison, 137 Md. 256 (1920).

earlier in the day. The trip apparently involved taking two streetcars. On the Friday in question, he completed his work, took the first streetcar, and, while crossing a public street in order to transfer to the second streetcar, was struck by an automobile and suffered fatal injuries.

The claimant relied on *Harrison* and another case involving a salesman that is not in point here [6] to support her claim. The Court characterized *Harrison* as a case in which "it might have been found that the employee was being taken charge of by the employer while he was attempting to board a train provided by the employer to bring men to the work", and rejected it as controlling the situation then before it. Though acknowledging some similarities, the Court warned:

> "Indeed, as has been remarked by some other courts, in almost any application now of this statutory provision, that only injuries which have arisen out of and in the course of the employment are compensable, examination of the reported decisions brings forward a multitude of similar cases which might be cited as precedents on one side and another, and not only is dependence upon precedents for a guide made difficult, but evidently it is attended with some danger of losing touch with the statute. It is only the simple direction of the statute that is being applied to each set of facts, and there is danger that in following the lead of resemblances in the facts of decided cases we may use them as stepping stones to foreign ground."

The Court concluded that the decedent's injuries did not arise out of and in the course of his employment. He had finished his work, and was free to get his pay at any one of several places which he could get to by any one of several means. That he chose to take the streetcar was of no consequence.

In *Boyer v. Pennsylvania R. Co.*, 162 Md. 328 (1932), the Court was called upon to interpret the Federal Employers' Liability Act. The case is not particularly relevant except for

6. Weston-Dodson Co. v. Carl, 156 Md. 535 (1929).

the fact that *Harrison* and *Miller* were cited for the proposition that an employee is not covered when going to work unless "in transportation furnished by the employer as part of his contract of employment." The employee in that case was proceeding to work in a private automobile driven by a fellow worker, and the claim was denied.

In *Lancaster v. Celanese Corp.,* 163 Md. 516 (1932), an employee had completed his work, left the plant, and was crossing a street to catch a bus when he was killed. The employer did not furnish transportation, and the Court had no difficulty in affirming the denial of coverage. It did, however, make this statement, at page 518:

> "The circumstances under which injury sustained during transportation may be compensable, as stated in the *Harrison* case . . . depend 'upon whether the conveyance has been provided by him (employer), after the real beginning of the employment, in compliance with one of the implied or express terms of the contract of employment, for the mere use of the employees, and is one which the employees are required, or as a matter of right are permitted to use, by virtue of that contract."

From the facts in *Harrison*, and the characterization of the case in *Miller, Boyer,* and *Lancaster,* it appeared that the extension of coverage might be limited to those situations in which the employer actually *furnished* the transportation. However, in *Heaps v. Cobb,* 185 Md. 372 (1945), the Court indicated that such extension would be applicable "whether it [the travel] be in a vehicle supplied by the employer or one of his [the employee's] own substituted for the same mission." *Heaps* involved a claim under the Baltimore City Retirement System, and was not a Workmen's Compensation case, although the Court held workmen's compensation principles to be applicable. The claimant was the surviving spouse of the City's Chief Engineer, who had been supplied a city car for both commuting and business. On the day in question, he used his own car to go to work, and, on the way, was involved in an accident from which he died. It was that

circumstance that led to and explains the comment quoted above.

The next Maryland case to consider the question was *Watson v. Grimm,* 200 Md. 461 (1952); but, before considering that case, it is first necessary to review a decision of the Supreme Court in *Cardillo v. Liberty Mut. Ins. Co.,* 330 U. S. 469 (1947), involving the District of Columbia Workmen's Compensation Act.

The employee there, a resident of the District, was employed by an electrical contractor doing work in the District and its environs. At a certain point, he was transferred from a job in the District to work on a project at Quantico, Virginia. The union contract required the employer to furnish "transportation and any necessary expense such as board and lodging . . . for all work outside the District of Columbia." The parties (whether the union or the individual employees is not clear) agreed that the employer would pay the employees involved $2 a day as a transportation expense, which was estimated to be the cost of travel between the District and Quantico and was in lieu of the employer actually furnishing the transportation.

The jobsite was several miles away from the Quantico bus and train terminals, and it was therefore necessary for the employees to make the trip by automobile. This they did by means of a carpool: the employees drove their cars to a central point and then proceeded in one car to the jobsite. On the fateful day, the claimant's decedent, one of these employees, had finished work and was driving himself and some of his carpooling co-workers home when a large stone was propelled through the windshield from the rear tire of a passing truck, striking the employee and causing his death. The Deputy Commissioner, acting for the D. C. Compensation Commission, found that the injury arose out of and in the course of employment, and awarded benefits.

The Court began its discussion of the issue by noting that the statutory phrase is "deceptively simple and litigiously prolific." As applied to injuries occurring during travel between home and work, "this phrase has generally been

construed to preclude compensation" because "they arise out of ordinary hazards of the journey, hazards which are faced by all travellers and which are unrelated to the employer's business." The Court then observed that certain exceptions to this "rule" had been fashioned, which it characterized as follows:

> "These exceptions relate to situations where the hazards of the journey may fairly be regarded as the hazards of the service. They are thus dependent upon the nature and circumstances of the particular employment and necessitate a careful evaluation of the employment terms."

The exception relevant to the case was "where the employer contracts to and does furnish transportation to and from work." As to this, the Court stated:

> "To be sure, there are many holdings to the effect that, where the employer merely pays the costs of transportation, an injury occurring during the journey does not arise out of and in the course of employment; there must be something more than mere payment of transportation costs. But assuming those holdings [which were cited in a footnote] to be correct and assuming the Deputy Commissioner's findings in this case to be justified, there is more here than mere payment of transportation costs. It was found that Ticer's employer paid the costs as a means of carrying out its contract obligation to furnish the transportation itself. *Where there is that obligation,* it becomes irrelevant *in this setting* whether the employer performs the obligation by supplying its own vehicle, hiring the vehicle of an independent contractor, making arrangements with a common carrier, reimbursing employees for the use of their own vehicles, or reimbursing employees for the costs of transportation by any means they desire to use. In other words, *where the employer has promised to provide transportation to and from work,* the compensability of the injury is in no way

dependent upon the method of travel which is employed." (Emphasis supplied.)

The key to compensability, in the Court's view, as the emphasized portions of its Opinion make clear, was the underlying contractual commitment to furnish the transportation, not the mere reimbursement of transportation expenses.

Turning now to *Watson v. Grimm, supra.* The employer, Grimm, was the garbage collector for the City of Hagerstown. The claimant's decedent, Watson, was his helper. Watson received a salary of $50 per month and board and lodging on Grimm's farm. The standard practice was for Grimm to drive his truck each day from the farm to Hagerstown, taking Watson with him and picking up two other helpers on the way. The three helpers customarily rode on the "running board" on the side of the truck.

On the day of the accident, after completion of the day's work, the truck ended up in the northern part of the city, about a mile from the center of town. Watson and one other helper stated that they wanted to get off downtown, rather, in Watson's case, than riding back to the farm. While en route downtown, Watson fell off the running board and sustained injuries that proved to be fatal.

Weaving together *Harrison, Heaps,* and the principles announced in *Cardillo,* the Court held, citations omitted:

> "We have stated that where an employer provides free transportation for his employee, the employee is deemed to be on duty during transportation, whether the employer supplies the vehicle or compensates the employee for the use of his own. . . . It is held by the overwhelming weight of authority that *where the employer agrees to provide transportation* for his employee to and from work, compensability of injury sustained during transportation is in no way dependent upon the method of travel employed." (Emphasis supplied.)

The Court, though citing *Cardillo,* made no mention of the Supreme Court's tacit acceptance of the principle that the

mere payment of transportation costs would not suffice to establish coverage. Indeed, there was no reason for it to do so, as that was not involved in the case before it. Instead, the Court concluded:

> "The fact that for three years the employee lived on the employer's farm three miles away from the city, and the fact that the place where he finished work was often more than a mile from the center of the city, considered together with the other facts and circumstances in the case, warranted the finding of the Commission that the employment continued from the time he got on the truck until he got off."

The last relevant decision of the Court of Appeals bearing on the issue was in *Tavel v. Bechtel Corporation,* 242 Md. 299 (1966).[7] The claimant there was a truck driver for Bechtel. He was assigned to work at Chaulk Point, some 38 miles from his home, and about 27 miles from the District of Columbia. He drove to and from work in his own car. Under a former collective bargaining agreement, employees living more than 25 miles from the jobsite were entitled to $1.20 per day "travel expense"; and, although the agreement currently in effect made no provision for such expense, the employer continued to pay it. The $1.20 had no relationship whatever to either the cost of transportation or the time it took to go back and forth. It was purely a fringe benefit to attract workers from the Washington area.

On these facts, the Court did not feel the case came within the *Harrison-Watson* principle, noting, at page 304, "the employer did not furnish the means of transportation nor pay its equivalent."

Finally, in terms of Maryland cases, there is *Western Electric Co. v. Engleman,* 13 Md. App. 374 (1971), in which *Tavel* was distinguished and coverage afforded. The claimant was an "installer" for Western Electric. He was based in Baltimore. Under the applicable collective bargaining agreement, if an installer was assigned to work at another

---

7. *Cf.* Cong. Country Club v. B. & O. R. Co., 194 Md. 533 (1950); Rumple v. Henry H. Meyer Co., Inc., 208 Md. 350 (1955).

location within range of daily travel, he was considered to be on "local assignment." In that event, the employer had two options: one, to furnish transportation to the jobsite by assigning him to travel as either a driver or a passenger in a company car; or, two, pay a "daily transportation expense allowance" and a "daily travel time allowance." The claimant, Engleman, was on "local assignment", and was not furnished a company car. Thus, he was entitled to and did receive these two allowances.

In fact, the claimant and another employee "carpooled" to the jobsite. The injury arose from an automobile accident that occurred while the claimant was a passenger in his fellow employee's car, as they were driving home from the jobsite. The question of whether the injury was compensable depended upon whether the two allowances bore a relation to reasonable travel expenses; for, if they did, the Court stated that the case would fall within the "free transportation" exception to the "going and coming" rule. After examining these allowances, the Court concluded that "Western did in fact, under an agreement to provide transportation, make payments which bore a relation to reasonable travel expenses." Thus, we distinguished *Tavel* and held that Engleman's injuries arose out of and in the course of his employment.

We have summarized these prior decisions of the Maryland courts in some detail because of the admonitions in *Miller* and *Cardillo* about the danger of blindly accepting general statements in this most prolific area. None of these cases involved precisely the point at issue here. What they do establish, in our judgment, is that, in terms of the "free transportation" exception to the "going and coming" rule, an injury occurring while an employee is on his way to or from work, which otherwise would be noncompensable as being the result of normal hazards unconnected with the employment, becomes compensable only if, under the terms of the employment, the employer is under some obligation to provide the transportation to the employee. It is that underlying obligation which brings the travel within the scope of the employment. Where that obligation exists, the method

of carrying it out becomes irrelevant; but where it does not exist, there is no coverage under this exception.

This seems to be the general view. Schneider states: [8]

"Where the payment of transportation costs is in reality one way of carrying out an original contract obligation to furnish transportation itself, an award of compensation is generally recoverable for accidental injuries sustained by an employee while travelling to or from his employment, and the compensability of the injuries is in no way dependent upon the method of travel which is employed. The obligation to furnish transportation must exist, however. The mere payment of the cost of transportation by the employer will not in itself justify an award."

Thus, as so many courts have stated, we must look first and always to the employment relationship itself. What was the contract between the parties?

There are very few cases, anywhere in the country, dealing with domestic servants *vis à vis* the Workmen's Compensation Act. This is because, until very recently, domestic servants were not covered under these acts,[9] or, for that matter, under any of the "protective" labor laws.[10] In looking at this industry, and the general nature of the employment relationship, we note that it is characterized largely by "day work" in private households, and that the payment by the employer of "carfare" — *i.e.,* reimbursement in some form for the cost of what is generally intraurban transportation — is not uncommon.[11] We have, then, a rather

8. Schneider's *Workmen's Compensation,* 3rd Ed., 1951, § 1744.

9. Coverage under the Maryland Act did not occur until 1975. Laws of Md., 1975, Ch. 686; *Md. Ann. Code* art. 101, § 21 (b) (9).

10. Coverage under the Fair Labor Standards Act was provided in 1974 (P.L. 93-259); Social Security coverage was provided in 1954 (P.L. 83-761); and Unemployment Compensation coverage not until 1976 (P.L. 94-566).

11. According to a publication of the United States Department of Labor (U.S. Gov't Printing Office: 1974 0-550-774) entitled "Private Household Workers", submitted to Congress in 1974, based on 1971 data and excluding "babysitters", there were nearly 1.8 million "private household workers" in the United States. Of these, all but about 100,000 were paid on a daily or

sizable industry with certain common characteristics that emanate from more than a million private contracts between individual employers and individual employees. The problem in fashioning any general rule to these myriad of contracts was commented upon by Larson: [12]

> "Suppose, for example, that Mrs. A pays her cook $40 a week plus $1 with which to buy a streetcar pass, while Mrs. B pays her cook $41, out of which $1 is destined to go for a pass, although it is not so labeled in the agreement for compensation. This technical difference in the name of the payment surely should not thrust upon Mrs. A a liability which extends throughout the streetcar journey, while relieving Mrs. B of the same liability. Yet this is what would happen under the oftenheard generalization that whenever the employer pays or reimburses the employee for travel expenses the travel becomes part of the employment. It should be apparent that, in some cases at least, the transportation allowance is merely a form of added compensation."

We are aware of only two instances in which the issue of coverage of a domestic servant receiving a "carfare" allowance has been adjudicated by an appellate court. Both were New Jersey cases, and both, relying on the above-quoted statement from Larson, denied coverage.

In *Lewis v. Ward,* 126 A. 2d 664 (1956), the claimant was employed as a domestic, one day a week, at a rate of $8 per day plus 20 cents carfare and one meal to be supplied by the

---

hourly basis for the days worked, and more than half worked three or less days a week. Approximately 28% worked for more than one employer. The report found at page 29:

> "Three-tenths of the domestics received transportation on at least one of the days they worked while only 15 percent received transportation on at least half of the days they worked during the survey week. Of the 267,000 domestics receiving transportation on at least half of the days they worked, two-thirds indicated the value of their fare or transport averaged less than $1.00 per day."

**12.** 1 Larson's *Workmen's Compensation Law,* § 16.30 (Payment for expense of travel).

employer. The actual carfare was in excess of 60 cents; and although the employee mentioned that fact to her employer, the allowance was not increased. The injury in that case arose, not during the course of public transportation, but when, for the second time in three years, the employer drove the claimant home after work. The principal question at issue was whether the 20 cents travel cost reimbursement brought the period of travel within the scope of the employment. The Court held that it did not, stating, at pages 666 and 667:

> "Although an exception is made to the general [going and coming] rule in those instances where the employer furnishes transportation to and from the place of employment, nevertheless, no exception is made where the employer provides transportation costs, as counsel for petitioner suggests. . . .
>
> "This court comes to the conclusion that under the facts in this case the payment of 20 cents for carfare was merely an additional compensation and nothing more."

In *Watkins v. Cowenhoven,* 216 A. 2d 15 (1965), *certif. denied,* 218 A. 2d 405 (1966), the claimant, as in *Lewis,* was employed as a domestic servant one day a week. She claimed that her salary was $10 and $1 for carfare; the employer did not recall whether carfare was mentioned in the arrangement, but stated, "when I paid her the $11 I presumed she was including her cost of transportation whether she drove herself or whether she came with her friend next door."

In fact, the claimant drove in her own automobile, and it was while returning home that the accident producing the injury occurred. Citing other language in Larson's all-purpose work, the Court stated, at page 17:

> "The criterion applied by the majority of cases in this type of situation is that the employee's travel to and from work should be deemed a part of the employment when a considerable distance is involved and deliberate and substantial payment is made by the employer for the expenses of travel."

Noting that the distance involved was 10 to 12 miles, the Court concluded, also at page 17:

> "In these days of suburban living this is not an uncommon distance for an employee to travel, and it does not appear that Mrs. Cowenhoven made special arrangements with petitioner because of the distance involved. She simply agreed to pay petitioner the going rate of $11 per day for domestic work. While the expression $1 carfare may have been used, it would appear that this was merely a form of added compensation. Certainly it was not shown that the $1 was related to petitioner's actual expenses."

These two cases, like all of the others, are, in one respect or another, factually distinguishable from the one *sub judice;* at best, they carry forward the doctrine that mere reimbursement alone does not suffice to extend coverage.[13]

We thus turn, as inevitably we must, to the contract between the Ryans and Stella Kasaskeris. In the beginning, whether because of appellee's difficulties with the public transportation system and the English language, or otherwise, Mrs. Ryan provided complete transportation for Ms. Kasaskeris. Clearly, while that arrangement was in effect, transportation was singled out for special consideration and it therefore formed part of the employment. This arrangement was changed, however; and what we must resolve is whether the change was in substance or only in form.

In this context, an agreement to provide, or to continue to provide, transportation "need not be express but may be implied from the nature, conditions and circumstances of the employment and the custom of the employer to provide transportation." *Watson v. Grimm, supra,* 200 Md. at 470. The record in this case establishes that the only reason for going

---

13. *See also* Guenesa v. Ralph V. Rulon, Inc., 189 A. 524 (Pa., 1937); Public Service Co. of Northern Illinois v. Industrial Commission, 18 N.E.2d 914 (Ill., 1938); Pappas v. Sports Services, Inc., 243 N.W.2d 10 (Mich., 1976). *Cf.* Pearce v. New Jersey Highway Authority, 300 A. 2d 358 (N.J., 1973) and Ricciardi v. Aniero Concrete Company, Incorporated, 312 A. 2d 139 (N.J., 1973).

to the new arrangement was that, in driving appellee home, Mrs. Ryan had to leave a small child alone in the house. The switch, therefore, was for her convenience, and not for the purpose of withdrawing the element of transportation from the total employment relationship. As she put it, "When I took it upon myself to ask her to supply her own transportation, I felt it was fair and right that I reimburse her for that."

From this, we conclude that there was more here than mere reimbursement. The substantive relationship continued as before, with the employer remaining responsible, under their private arrangement, for appellee's transportation. The only change was in the form of satisfying that obligation: reimbursement for carfare in place of the employer acting as chauffeur. Thus, in light of this conclusion, we believe that appellee fell within the "free transportation" exception.

Had appellee's injury occurred during the bus ride, we would need say no more. But it didn't. It occurred two blocks from the bus stop, along the "walking" leg of the journey. This raises another question: how much of the total journey is covered — that for which the employer has paid or all of it?

Once again, we find no cases directly in point, and must proceed by analogy. In *Pariser Bakery v. Koontz, supra,* the Court said, at 239 Md. 590, "An injury arising in the course of employment is one which occurs while the workman is doing the duty which he is employed to perform *at a place where he reasonably may be in the performance of his duties.*" (Emphasis supplied.) The very rationale of the "free transportation" doctrine is that the travel is part of the employment, that the day's employment therefore commences when the employee starts on the course of his journey,[14] and that the employee is performing his job-related duties while in transit. Upon that premise, at least from the time appellee stepped on the bus, she was in the course of her day's employment.[15] That being so, appellee, during the

---

14. That circumstance distinguishes this case from the facts, and therefore the holdings, in Pariser and Md. Paper Products Co. v. Judson, 215 Md. 577 (1958).

15. We need not, and therefore do not, decide whether the employment might have commenced at some earlier point.

course of her walk from the bus stop to the Ryan home, was "at a place where [s]he reasonably may be in the performance of [her] duties." [16] If she was working for Mrs. Ryan while riding the bus, she was also working for her when crossing the street. Accordingly, the underlying base upon which the "free transportation" doctrine itself rests, necessarily compels extension of the doctrine to include this last leg of the journey.

For these reasons, the judgment of the lower court is affirmed.

*Judgment affirmed; appellants to pay the costs.*

---

**16.** There is no evidence in the record, and no claim is made, that appellee did other than take the most direct route, without deviation, from the bus stop to the Ryan home.