688 A.2d 968

**Peggy LEE**

v.

**BSI TEMPORARIES, INC. et al.**

**No. 813, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Feb. 7, 1997.

2

Robert Taylor, Jr. (Ingerman & Horwitz, on the brief), Baltimore, for Appellant.

Mark T. Krause (Antonio R. Lopez and Steven J. Meltzer and the Law Office of Joseph F. Lavin, on the brief), Baltimore, for Appellees.

Argued before MURPHY, C.J., and MOYLAN and CATHELL, JJ.

CATHELL, Judge.

Once again, the issue facing us is whether a worker's accidental injuries arose out of and in the course of her employment. In this case, the employee sustained her injuries while riding on a bus that was provided by her employer. The Workers' Compensation Commission decided that issue against Peggy Lee, appellant, the employee, and in favor of BSI Temporaries, Inc., appellee, the employer, and that determination was confirmed by the Circuit Court for Baltimore City. Appellant filed a timely appeal therefrom; she presents three issues:

A. If an employer hires a third party to transport employees to and from the workplace, and the cost of this service is met by a fee deducted from each employee's paycheck, are injuries suffered by an employee while using this service compensable under Maryland['s] worker[s'] compensation statutes?

B. Under the "employer conveyance" exception to the coming and going rule, must a claimant demonstrate that the employer was "obligated" to provide transportation?

C. Given the agreed-upon facts of this case, did the employee suffer a compensable work-related injury?

In actuality, we need only speak to appellant's first issue. In order to address that issue, we will need to analyze the scope of the employer conveyance exception to the coming and going rule, thereby answering appellant's second issue. Appellant's third issue is little more than a restatement of the first.

## The Relevant Facts

We shall begin by setting forth the facts of this case, which are neither complicated nor in dispute. Peggy Lee, appellant, was an employee of BSI Temporaries, Inc. (BSI), appellee,[1] a temporary services agency. On July 19, 1995, appellant, while employed by BSI, was working at a Proctor & Gamble plant in Baltimore. BSI contracted with the Woodlawn Bus Co. (Woodlawn) to transport its employees to and from the Proctor & Gamble plant on a daily basis. BSI designated various locations and times throughout the Baltimore area where the Woodlawn buses stopped to pick up and discharge the employees; only BSI employees were allowed to ride the buses. BSI employees were neither obligated nor required to use the bus service. The employees, including appellant, were free to arrange their own transportation to the plant. Those who chose to make use of the bus service had five dollars deducted from their paychecks for each day they utilized the bus service. The funds that BSI collected from the employees roughly equaled the amount that BSI paid to Woodlawn under the contract. Furthermore, BSI directed its employees to bring any complaints about the bus service to its attention.

On July 19, 1995, appellant was injured while riding on one of the buses when that bus struck a curb. As a result of the injury, appellant filed a claim with the Workers' Compensation Commission. A hearing was held on November 15, 1995, and appellant's claim for benefits was denied. The Commission found that appellant had not sustained an accidental injury arising out of and in the course of her employment with BSI.[2] Thereafter, appellant appealed to the Circuit Court for Baltimore City, and that court, on March 28, 1996, confirmed the

---

1. The Zurich Insurance Company, BSI's workers' compensation insurer, is also an appellee.

2. Apart from a summary notice of its disposition, the record presented to us does not contain an opinion or decision by the Commission. Thus, we have no way of knowing what fact finding the Commission made or the basis upon which its decision rested.

Commission's determination.[3] Appellant filed a timely notice of appeal therefrom.

## The Law

It is a well settled principle that injuries sustained by an employee while he or she is commuting to or from work are generally not considered to arise out of and in the course of employment and, therefore, are not compensable under our workers' compensation statute. *Morris v. Board of Educ.*, 339 Md. 374, 379, 663 A.2d 578 (1995); *Alitalia Linee Aeree Italiane v. Tornillo*, 329 Md. 40, 44, 617 A.2d 572 (1993); *see also Board of Trustees v. Novik*, 326 Md. 450, 453, 605 A.2d 145 (1992); *Maryland Casualty Co. v. Lorkovic*, 100 Md.App. 333, 345, 641 A.2d 924 (1994). This is commonly referred to as the "coming and going" rule. In *Morris*, former Court of Appeals Chief Judge Murphy explained the rationale behind the noncompensability of injuries sustained while an employee is commuting:

> This is because getting to work is considered to be an employee's own responsibility and ordinarily does not involve advancing the employer's interests. Moreover, the hazards encountered by an employee while commuting to work are common to all workers, no matter what their job, and, hence, such risks cannot be directly attributable to a person's particular employment.

339 Md. at 380, 663 A.2d 578 (citation omitted); *see also Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 479, 67 S.Ct. 801, 807, 91 L.Ed. 1028 (1947) (injuries incurred while commuting "arise out of the ordinary hazards of the journey, hazards which are faced by all travelers and which are unrelated to the employer's business"); *Wiley Mfg. Co. v. Wilson*,

---

**3.** In its Memorandum and Opinion, the circuit court found that appellant "was not within the course of employment when [she] sustained her injuries." The court then ordered, "the claimant's appeal of the Worker's Compensation Commission's decision denying her benefits is DISMISSED." We shall treat the court's order as a confirmation of the Commission's decision. See Md.Code (1991), § 9–745(e) of the Labor & Employment Article.

280 Md. 200, 206, 373 A.2d 613 (1977); *Salomon v. Springfield Hosp.*, 250 Md. 150, 154, 242 A.2d 126 (1968). Stated otherwise,

> [i]njuries sustained while an employee is traveling to or from the workplace ordinarily are not compensable ... because the hazards which employees face during daily commuting trips are common to the public at large. The risks to which an employee is exposed while going to or coming from work are no different from the ones which confront workers while they are traveling on personal excursions.

Richard P. Gilbert & Robert L. Humphreys Jr., *Maryland Workers' Compensation Handbook* § 6.6 (2d ed.1993) (footnotes omitted).

As with many general principles of law, the coming and going rule is subject to several exceptions. Among them are two related and somewhat overlapping exceptions: the free transportation exception and the employer conveyance exception. The distinctions between the two, as we shall explain, are the degree of control exercised by the employer over the mode of transportation and to what extent the employer was under an obligation to furnish the employee with the transportation.

Appellant contends that her workers' compensation claim comes under the employer conveyance exception. Appellant has, however, cited many cases decided under the free transportation exception in her brief as support for her position. Therefore, we shall address both. In doing so, we are mindful that "[e]ach case involving the going and coming rule and its exceptions must turn on its own particular facts." *Alitalia,* 329 Md. at 46, 617 A.2d 572; *Morris,* 339 Md. at 381, 663 A.2d 578; *Lorkovic,* 100 Md.App. at 355, 641 A.2d 924; *see also Cardillo,* 330 U.S. at 479, 67 S.Ct. at 807. We are also heedful of the requirement that "the Maryland Workers' Compensation Act is to be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate

its benevolent purposes as remedial social legislation." *Alitalia*, 329 Md. at 48, 617 A.2d 572.

### The Free Transportation Exception

The first Maryland case to engraft an exception onto the coming and going rule was *Harrison v. Central Constr. Co.*, 135 Md. 170, 108 A. 874 (1919). Joel Harrison was employed by the Central Construction Co., and, under the terms of his employment agreement, he was furnished with "free transportation" to and from his workplace. While boarding a special "work train," Harrison fell and suffered a traumatic amputation of his lower leg. His claim for workers' compensation benefits was challenged by his employer as being within the coming and going rule exclusion. Relying on cases from foreign jurisdictions, the Court of Appeals determined:

> When the injury occurs before the beginning or after the termination of work there are two general rules applicable to the question as to whether it arose out of and in the course of the employment. The first is that an employee, while on his way to work, is not in the course of his employment. The second is that where the workman is employed to work at a certain place, and as a part of his contract of employment there is an agreement that his employer shall furnish him free transportation to or from his work the period of service continues during the time of transportation, and if an injury occurs during the course of transportation it is held to have arisen out of and in the course of employment.

135 Md. at 177–78, 108 A. 874; *see also Rumple v. Henry H. Meyer Co.*, 208 Md. 350, 118 A.2d 486 (1955). In short, as pertinent to the case *sub judice*, Harrison rode to and from work each day on a train that was neither owned nor operated by his employer, and yet, because his employer was obligated to provide that transportation to Harrison for free, he was awarded compensation even though his injury occurred while he was commuting.

In *Cardillo, supra,* the United States Supreme Court considered the workers' compensation claim of a District of

Columbia man. Clarence Ticer, the employee, was part of a car pool from his home in the District to his workplace in Virginia. Pursuant to an agreement between his union and the employer, Ticer and his coworkers were to be "furnished" with "[t]ransportation ... for all work outside the District of Columbia." The employer also agreed that each laborer would be paid two dollars per day as transportation expenses, and this amount represented the approximate cost of round-trip travel. Ticer was fatally injured while commuting to work one day when a rock came through the windshield of the car he was driving and struck him in the head. His wife's death benefits claim was opposed by the employer and insurer who argued that Ticer's injury did not arise out of and in the course of his employment. Speaking to the free transportation exception, the Supreme Court opined:

> It was found [by the workers' compensation commission] that Ticer's employer paid the costs [of his daily commute] as a means of carrying out its contract obligation to furnish the transportation itself. Where there is that obligation, it becomes irrelevant in this setting whether the employer performs the obligation by supplying its own vehicle, hiring the vehicle of an independent contractor, making arrangements with a common carrier, reimbursing employees for the use of their own vehicles, or reimbursing employees for the costs of transportation by any means they desire to use. In other words, where the employer has promised to provide transportation to and from work, the compensability of the injury is in no way dependent upon the method of travel which is employed.... [T]he employer is free to carry out its transportation obligation in any way the parties desire; and the rights of the employees to compensation are unaffected by the choice made.

330 U.S. at 482–83, 67 S.Ct. at 809 (footnote omitted).

The free transportation exception was thoroughly discussed in our case of *Ryan v. Kasaskeris*, 38 Md.App. 317, 381 A.2d 294 (1977). Stella Kasaskeris, a domestic servant for the Ryans, was, as a condition of her employment, provided with round-trip transportation, bus fare. During her commute to

work, after alighting from the bus, she was injured while walking the short distance from the bus stop to the Ryans' house. The Court framed the issue before it as

> whether an injury sustained by a domestic servant, whose transportation expenses are reimbursed by her employer, arises out of and in the course of her employment, and is therefore compensable under the Work[ers'] Compensation Act, if it occurs while she is in transit to or from her employer's home.

38 Md.App. at 318, 381 A.2d 294. After detailing the development of the free transportation exception in Maryland, the Court summarized the doctrine:

> [I]n terms of the "free transportation" exception to the "going and coming" rule, an injury occurring while an employee is on his way to or from work, which otherwise would be noncompensable as being the result of normal hazards unconnected with the employment, becomes compensable only if, under the terms of the employment, the employer is under some obligation to provide the transportation to the employee. It is that underlying obligation which brings the travel within the scope of the employment. Where that obligation exists, the method of carrying it out becomes irrelevant; but where it does not exist, there is no coverage under this exception.

38 Md.App. at 328–29, 381 A.2d 294. The *Ryan* Court then held that, because the Ryans were responsible for providing Kasaskeris's transportation—whether by actually driving her to and from work or by providing bus fare—and because her actual transportation costs were reimbursed by the Ryans, Kasakeris's claim came within the free transportation exception. *Id.* at 333–34, 381 A.2d 294. Thus, because the employers were responsible for the claimant's transportation and reimbursed her commuting costs, the employee's claim came within the free transportation exception, without regard to the fact that she was walking between the bus stop and place of employment at the time she was injured. *Compare Tavel v. Bechtel Corp.*, 242 Md. 299, 219 A.2d 43 (1966) (where contractually provided "travel expenses" bore no relationship to actu-

al expenses, case did not come within free transportation exception).

More recently, the free transportation exception was at issue in *Maryland Casualty Co. v. Lorkovic, supra.* Albert Lorkovic, the employee, sustained injuries in a one-car accident that occurred while he was driving home from the airport following a business trip. Although Lorkovic was not ordinarily compensated for trips between his home and office, when on business trips "[t]he mileage as well as airline and everything was paid for by the company." 100 Md.App. at 341, 641 A.2d 924. Looking to the employment relationship between the two parties, the Court held that Lorkovic's claim came within the free transportation exception. The Court found that

> [t]he record in this case clearly reflects that Maryland Casualty had obligated itself to provide for Lorkovic's transportation during his business trips, from the time he left his home until the time he returned to his home or place of business. It is undisputed that Maryland Casualty always reimbursed Lorkovic for the expenses of his business travel, including the cost of transportation to and from the airport.

*Id.* at 356, 641 A.2d 924. Thus, despite the fact that Lorkovic, the employee, was traveling in his own car and was the operator of that vehicle at the time of the injury, his claim was compensable because his employer was obligated to provide him with free transportation and did so.

Consequently, the free transportation exception allows compensation where the employer has, in essence, extended the workday to include the time spent commuting by a contractual obligation to furnish free transportation. In sum, therefore, when an employer is obligated to incur the costs of an employee's transportation and does so, the workers' compensation claim of an employee injured while commuting comes within the free transportation exception to the coming and going rule, regardless of the mode of transportation utilized by the employee, the entity that is in control of those means, and how the employer chooses to meet its obligations.

■ Turning to the case *sub judice*, we hold that appellant's claim does not come within the ambit of the free transportation exception. Appellant was neither provided with free transportation (she was charged five dollars for each day that she opted to utilize the bus service) nor was BSI obligated to provide appellant with any form of transportation to and from the Proctor & Gamble plant.

### The Employer Conveyance Exception

As opposed to the free transportation exception, which focuses upon the obligation to provide free transportation, the employer conveyance exception focuses upon control over the means of transportation.

The cardinal Maryland case resting upon the employer conveyance exception is *Watson v. Grimm*, 200 Md. 461, 90 A.2d 180 (1952). The case, however, also rests, in large part, upon the free transportation exception, thereby illustrating the substantial, and sometimes indistinguishable, overlap of the two exceptions. In that case, George Watson, the employee, fell to his death while riding on a garbage truck that was owned and operated by his employer, William Grimm. As was the parties' custom, Watson rode to and from work each day with Grimm in the garbage truck. This arrangement was in place for over three years, from which the Court of Appeals found that the daily transportation was incidental to the parties contract of employment.

The compensation claim filed by Watson's dependent son was opposed by Grimm on the ground that the injury did not arise out of and in the course of Watson's employment. As relevant to the case *sub judice*, the Court of Appeals opined:

> In order to bring a case within the exception to the "going and coming rule," it is not necessary to show that service to the employer was the sole cause of the trip, but it must at least have been a concurrent cause....

> We acknowledge, of course, that if the employee himself is driving the vehicle and the employer has not given consent to a deviation from the normal route of transporta-

tion, then an injury sustained during the deviation may not have occurred in the course of employment. . . .

. . . .

Where the driver of the vehicle is furnished by the employer, the employee's case is stronger because then the employer's agent has control over the acts and movements of the employee.

*Watson,* 200 Md. at 471–72, 90 A.2d 180 (citations omitted). As pertinent to the employer conveyance exception, and in contrast to the cases discussed above, Watson, the employee, fell to his death while riding on a truck that was *owned and operated, i.e., controlled, by his employer, and the Court of Appeals found the workers' compensation claim to be compensable.* The *Watson* Court did so, in part, because the Court found that there was an implied agreement to provide transportation based upon the parties' course of conduct—*i.e.,* the transportation was incidental to the employment.

In his definitive treatise, Professor Larson relates the exception to the coming and going rule covering trips in an employer's conveyance thusly:

If the trip to and from work is made in a truck, bus, van, car, or other vehicle *under the control* of the employer, an injury during that trip is incurred in the course of employment.

*. . . The reason for the rule in this section depends upon the extension of risks under the employer's control.*

1 Arthur Larson, *The Law of Workmen's Compensation* § 17.11 (1992) (footnotes omitted; emphasis added). Larson then points out that the exception applies even if the employer charges the employee for the transportation:

Since the element of control of the risk in the employer-operated-vehicle case is an independent ground of liability, the employer remains liable for the journey even though he charges the employee an amount for the trip sufficient to cover its cost. . . . [C]ontrol of the conditions of transportation remains as a ground of liability.

*Id.* at § 17.12 (footnote omitted). Larson then further discusses the employer conveyance exception, which is based upon control over the mode of transit by giving an example of where transportation is available, but not used:

> [One] type of case in which the difference of reason must be observed is that in which a substitution for the normal mode of transportation is made. If there is nothing more in the facts than the bare availability of transportation in the employer's conveyance, which privilege the employee forgoes in favor of using his own car, motorcycle, or bicycle, compensation has been denied. This result is consistent with the present analysis of the underlying rationale of the employer-conveyance exception, since plainly the employee is not subject to the hazards of a facility of his employer while traveling in the employee's own vehicle.

*Id.* at § 17.13 (footnotes omitted).[4]

Professor Larson subsequently addresses whether the provision of transportation in the employer's conveyance need be contract-based:

> The provision of transportation by the employer may come about as a result of custom and usage, as well as by express contract, as when employees, working at some distance from their homes, engage in the known and habitual practice of riding on the employer's trucks.... [A]n isolated and unauthorized ride in the employer's conveyance has usually been held to be outside the course of employment.

*Id.* at § 17.30 (footnotes omitted). This statement was echoed by the Court of Appeals of New York in language that we find especially pertinent:

---

4. This principle is well illustrated by our case of *Carter v. M.V. Constr. Corp.*, 47 Md.App. 169, 175–76, 422 A.2d 44 (1980), where compensation was denied, in part, because Carter, the employee, was riding in the automobile of a coworker at the time he was injured rather than in a company truck that was under the supervision and control of one of the company's superintendents.

While transportation provided by an employer in isolated cases only, or on an infrequent basis, may not be deemed to be an incident of employment, a frequent and regular practice of providing transportation must be viewed differently. Such a course of conduct indicates that the employer has implicitly assumed the responsibility of transporting his employees to work. The employees may come to rely on the employer to continue providing transportation and the employer may likewise encourage the practice to assure that the employees will arrive at the job on time. At some point the practice may become so common and so associated with the employment that it must be seen as incidental to it. Once this point is reached there is no meaningful distinction between transportation furnished by custom and that provided by contractual obligation. In both cases the employer has knowingly assumed a duty, partially at least, for his own benefit. Unfortunately it is predictable, and indeed inevitable, that accidents will occur from time to time while employees are traveling to work. An employer who assumes ... responsibility to transport his employees must likewise bear the responsibility for the risks encountered in connection with the transportation. This is especially true when the employer is in exclusive control of the conveyance.

*Holcomb v. Daily News,* 45 N.Y.2d 602, 606–07, 412 N.Y.S.2d 118, 120–21, 384 N.E.2d 665, 667 (1978) (citation omitted). The pronouncement of the Nebraska Supreme Court in *Schademann v. Casey,* 194 Neb. 149, 231 N.W.2d 116, 122 (1975), is also instructive:

We conclude that where incident to the employment contract, whether express, implied, or by custom, it is understood by the employer and employee that the employer will transport the employee to or from the place where the work is to be done, and the employer does so provide that transportation in a vehicle under the employer's control, an injury during that journey arises out of and in the course of employment.

*See also generally J.D. Dutton, Inc. v. Industrial Comm'n,* 120 Ariz. 199, 201, 584 P.2d 1190, 1192 (Ariz.Ct.App.1978);

*Kopfman v. Freedom Drilling Co.,* 220 Neb. 323, 370 N.W.2d 89, 92–93 (1985); *Green v. Bell Cleaners,* 65 N.J.Super. 311, 167 A.2d 815, 819–20 (App.Div.) ("The customary practice of furnishing transportation ... in the [employer's] vehicles served the employer's interest by the consequent improvement of employer-employee relations ...."), *aff'd. mem.,* 35 N.J. 596, 174 A.2d 474 (1961); *Holcomb,* 45 N.Y.2d at 605–06, 412 N.Y.S.2d at 119–20, 384 N.E.2d at 666 (compensation allowed where "employer regularly provides a conveyance exclusively to transport employees to and from work"); *Constantine v. Sperry Corp.,* 149 A.D.2d 394, 539 N.Y.S.2d 499, 500 (1989) (compensation awarded to claimant injured while riding in van leased by employer); *Bristow v. Cross,* 210 Va. 718, 173 S.E.2d 815, 817–18 (1970) ("While the employees were not on the payroll during the time consumed between the drive from the Cross home to the company's office, they were nevertheless in a vehicle owned, controlled and operated by the employer, and following a route of its choosing.").

■ In sum, therefore, the employer conveyance exception allows for the compensation of employees who are injured while riding in a conveyance that is under the control of the employer when such transportation is incidental to the employment as a result of an express or implied agreement or by custom or continued practice of the parties, without regard to whether the transportation is provided for free or paid for by the employee and whether alternate forms of transportation are available.

### Resolution

■ Appellant was riding in a bus that was contracted for by her employer at the time she was injured; apparently she rode this bus with some frequency and did so with the consent of her employer. By providing the bus, BSI undertook responsibility for the daily transportation of its employees, and, thus, the transportation was incidental to appellant's employment. The determinative issue is whether the Woodlawn bus was under the "control" of BSI. We hold that it was and shall reverse the decision of the circuit court. We explain.

In *Goines v. State*, 89 Md.App. 104, 111, 597 A.2d 987 (1991), *cert. denied*, 325 Md. 396, 601 A.2d 129 (1992), albeit a criminal case, we ascribed to the word "control" its ordinary meaning:

> "... According to Webster's Third New International Dictionary, Unabridged (1961), 'control' is defined as 'to exercise restraining or directing influence over.' It has also been defined to relate to authority over what is not in one's physical possession." Looking to the most current edition of The Oxford English Dictionary, we find that one definition of control means "[t]o exercise restraint or direction upon the free action of; to hold sway over, exercise power or authority over; to dominate, command." III The Oxford English Dictionary 853 (2d ed.1989). [Citation omitted.]

*Accord Dippel v. Juliano*, 152 Md. 694, 699, 137 A. 514 (1927) ("Ordinarily [control] means the power to govern, dominate, direct or supervise in some respect the conduct of another....").

In the case *sub judice*, while the Woodlawn bus was neither owned nor driven by BSI, it was BSI that contracted for the bus for the express purpose of transporting its employees to and from work each day. BSI regulated the number of times each working day that the bus ran; it also dictated where the stops were to be made and at what time. BSI, therefore, directed its operations. BSI also restrained operation of the bus—non-BSI employees were prohibited from riding the bus. For example, a Proctor & Gamble employee working at the same plant and on the same shift as the BSI employees had to find alternate means of transportation, even though the bus would have taken them to the same place at the same time. In addition, BSI further restrained operation of the bus service, in that even BSI employees were prohibited from riding the bus for any purpose other than commuting to and from the workplace. Furthermore, we find added control on the part of BSI from the fact that when not enough employees rode the bus to meet the contract cost, BSI subsidized the shortfall. Although the system was designed so that, collectively, the employees would absorb fully the cost of the bus

service, by making up any deficiency when necessary, BSI insured that the bus service would continue to operate.

Moreover, provision of the bus service was to BSI's benefit. Although it did not need to do so, BSI voluntarily undertook responsibility for transporting its employees daily. This made certain that the BSI employees would arrive for work on time. Furthermore, those employees who would not have been able to work at the distant Proctor & Gamble plant without the provision of transportation could now do so. This is not to say that the employees were not also benefited. Surely, they were. By providing the bus service, BSI undertook responsibility for the transportation of its employees, and, by doing so, the risks and hazards of the commute came under BSI's control. Left to arranging their own way to work, the employees would have been exposed to the same risks and hazards as other commuters—problems that could and would have been dealt with by the employees themselves. By riding the employer-provided bus, the employees were subjected to risks and hazards different from other commuters; they were exposed to dangers that were under BSI's control, risks confronted solely because they were employed by BSI. The public at large was not subject to the same risks, because only BSI employees were allowed to ride the buses. In addition, because the employees were prohibited from riding the bus for personal excursions, the perils confronted by the employees were attributable solely to their *employment* with BSI.

In conclusion, we hold that the facts of the instant case illustrate sufficient control[5] by BSI over the transportation so that appellant's injuries come within the employer conveyance exception to the coming and going rule. We do so mindful

---

**5.** We do not intend for our analysis of "control" in the instant case to be necessarily compatible with the proper analysis of the similar element in a different context, e.g., analyzing master/servant versus independent contractor relationship. *See, e.g., Katz v. National Paving and Contracting Co.,* 214 Md. 479 (1957). The issue of "control" in the instant case has been considered in its special statutory context and under the general injunction to liberally construe the statute so as to effectuate its benevolent purpose.

that arrangements such as those made by BSI for its employees may have proliferated recently due to the initiation of employee trip reduction programs under the federal Clean Air Act. Whether the workers' compensation statute should be modified to address an employer's obligations under the federal statute is not within the province of this Court. It would appear to be for the Legislature or, perhaps, the Court of Appeals to address.

**JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEES.**