# RICHARD C. ZENTZ *v.* PETERS & TAYLOR, INC. ET AL.

[No. 283, September Term, 1970.]

*Decided January 11, 1971.*

The cause was argued before ORTH, MOYLAN, and POW-ERS, JJ.

*Harry Goldman, Jr.,* for appellant.

*Charles R. Goldsborough, Jr., Special Assistant Attorney General,* with whom were *Francis B. Burch, Attor-*

*ney General,* and *J. Howard Holzer* on the brief, for appellees.

ORTH, J., delivered the opinion of the Court.

We affirm the judgment of the Baltimore City Court in favor of Peters & Taylor, Inc., employer, and State Accident Fund, insurer, appellees, for costs. We find that there was legally sufficient evidence to support the court's determination that the injury suffered by Richard C. Zentz, employee-appellant, resulted solely from his intoxication while on duty. We hold, therefore, that the lower court's disallowance of appellant's claim under the Workmen's Compensation Law was not clearly erroneous. Maryland Rule 1086.

The case came to the Baltimore City Court on appeal from a disallowance of the claim by the Workmen's Compensation Commission. The Commission had found on issues before it that (1) appellant did not sustain an accidental personal injury arising out of and in the course of employment; (2) appellant's disability was not the result of an accidental personal injury arising out of and in the course of employment; and (3) appellant's injuries were due solely to his intoxication.[1] The case was presented to the Baltimore City Court, sitting without a jury, on the record before the Commission.[2]

---

1. Two other issues were contingent upon a finding that appellant met with a compensable injury.

2. We think it clear from the transcript of the proceedings before the court that only one issue was presented to it, the third issue before the Commission: "Are the claimant's injuries due solely to intoxication." The docket entries in the Baltimore City Court read: "To the issues submitted the Court answered orally as follows: 1st issue, 'No', 2nd issue, 'No', 3rd issue, 'Yes' the Court thereby affirming the decision of the Workmen's Compensation Commission." What the court said, according to the transcript was "* * * I do not find that the Commissioner was wrong in his findings of fact or application of law to those facts, and for that reason I will affirm the Commission by finding in connection with the one issue before me that the intoxication was the sole cause of the injury."

We observe that since issues one and two before the Commission were not before the court, they would stand whether or not the court found that the intoxication was the sole cause of the injury. On the Commission's determination of those two issues

Appellant's testimony before the Commission was sparse. He did not remember the date of the accident but knew it was in April (1968). "We got up on the roof. * * * me and the other foreman. Mr. Peters, he can tell you his name, I forget his name—Mishenko we got in an argument about who is going to mop. I said I can mop (with tar) * * * he hit me and then beat me — the devil out of me * * * On the roof." He did not remember whether he fell off the roof. His jaws and nose were broken. On cross-examination he said he reported for work the day he was injured about 6:00 A.M. The job was in Aberdeen and five or six men were to be transported to the job in a truck. Asked if he drove the truck, appellant said: "After, let me see, no I don't believe I ever drove the truck. I believe I did drive when — wait a minute — I drove once or twice. I don't remember what day I drove or anything." When they started there was a half pint of whiskey in the truck—"we bought it between three of us" on the way to the job. He did not remember whether they finished it on the job—he had only one shot out of it. "When I take a drink I can not drink a lot at one time." He did not think they stopped at a filling station. He denied drinking beer because "I don't drink beer early. I don't until one or two o'clock." The others were drinking beer as chasers but not him. Questioned about the fight he said, "I don't—I can't remember anything." Queried by the Commissioner he remembered they stopped at a Sinclair station "on the right hand side." He could not say who was in charge of the job. "You know how roofers work together, we were both foremen, so I wouldn't say actually who was in charge, not when it comes down to it." Nobody was over him and Mishenko that morning.

There was adduced from Charles K. Peters, president of Peters & Taylor, Inc. that he had received a telephone call from appellant and Mishenko about 9:30 A.M. on the

_____

alone, standing unchallenged, appellant would not be entitled to compensation.

day of the incident. "Now they should have been on the job long before that but they told me that they had decided not to work and were coming back and I explained to him they had a load of material being delivered on the job, which had to be unloaded and asked them to go back, reconsider and decide whether they are going to work or not. So they agreed to go back and unload the truck. Then [about 9:30 A.M.] I got a call from the Moore brothers who were on the truck and they said [appellant and Mishenko] were drunk and they wouldn't ride with them." He told them to wait on the highway, that he would come out and pick them up. Appellant and Mishenko took the truck to the job (Peters did not know who drove) leaving the Moore brothers on the highway where they were picked up by Peters and driven to the job. When he arrived at the job all except appellant were working. "I asked him why he wasn't working and he said his nose was bleeding and I asked him if he wanted me to take him to a doctor and he said no." The others said there had been a fight. Appellant then said "he had a fight with Mishenko and he wasn't going to work." Peters testified that appellant "* * * appeared to have been drinking. I wouldn't say the man was drunk. I wouldn't go that far after seeing his physical condition but —" Appellant refused to go to a doctor. "I brought him all the way back to Baltimore before I talked him into it." Peters took appellant to St. Agnes Hospital. Mishenko told Peters that appellant had started to fight. "He wouldn't say exactly why, just when he takes spells of running his mouth off, that's all he would tell me."

George Mishenko testified that on 16 April 1968 he worked for Peters & Taylor, Inc. and reported to the shop near Washington Boulevard. He, "Dick, Whitey, Henry and a couple of colored boys" were to go to a job in Aberdeen. He drove from a gas station two blocks from the shop to the job. On the way they stopped at three or four bars. Whitey, Henry, Dick (appellant) and Mishenko were drinking before they got to the bars ("we were drinking at the gas station") and in all the bars. Appel-

lant "had a half pint of Calvert. That was the first one and then after we got Seagrams Seven, because I like Seagrams." The half pint of Calvert finished they stopped to get some more. They bought another half pint at a tavern at Orleans and Castle Streets. Mishenko, appellant and Whitey, riding in the front seat of the truck, finished the second half pint by the time they got on route 40. They stopped at a bar. Mishenko and appellant each had a shot and a beer. They bought another half pint and were joined in the front seat by Henry. The four of them finished that half pint and then they stopped at a bar. Appellant, Mishenko and Whitey had another beer and shot and bought another half pint. Appellant was drinking out of that half pint and they finished it. "[T]hat's when we started arguing." They were about 15 miles from the job. Asked why they argued, Mishenko said, "He [appellant] was making a hog of hisself. * * * He was open choking.[3] * * * I told him to shut his big mouth, you know, different language naturally, but actually what it boils down to, he didn't pay for it, now everybody wanted to and he ought to be glad, you know, so then he stopped and he bought a half pint then the next bar and I paid for the beer and the shots we had there." They finished that half pint before they got to the job. Mishenko's recapitulation of the imbibing was that at first three of them including appellant, and ultimately one more person, drank three half pints of whiskey and that appellant, in addition, had four shots and four beers. When they arrived at the job Mishenko called Peters. "Well, Dick was running his mouth—he wasn't going to work for me, and I'm no good and a whole bunch of good words." Mishenko said he was the boss that day and he called Peters and told him "he better come up here and get Dick [appellant] because he can't go to work anyway * * * Dick wasn't going to be able to work and we lost two boys off the back of the truck." He explained that

---

3. Appellant's attorney explained to the Commissioner: "That's a shotgun term. That means open twelve gauge which could accept more than a closed choked gun."

two of the men riding in the back jumped off when the truck stopped at a red light. Mishenko said he had known appellant for 15 years. "We drank a lot together." Asked what happened on the job, Mishenko said:

> "[W]e went up on the roof and he was still running his mouth and I told him, I said, 'man shut up, you know or else take your glasses off.' So about that time he took a swing at me and I popped him and knocked him down. Knocked him down and I held him and said, you know shut up and that's when he kicked me and he was kicking me and I popped him again and that was the end of it. So I went down and he went down to the ground to the trailer was there with the freight and get the men, you know, unloading the truck. I came down and he went back of the truck and he just said—that's when Mr. Peters came and picked him up. That's when he said to finish unloading the trailer and knock off."

The Commissioner asked: "If you hadn't been drinking, do you think you would have been fighting?" Mishenko said, "No, sir." Asked if he had any arguments with appellant before, Mishenko said, "Just arguing, he never took a swing at me before." The Commissioner again asked: "If you hadn't been drinking you wouldn't got in a fight?" Mishenko replied: "No, sir, I don't think so. He would have never run his mouth, if he hadn't been drinking."

Disallowing the claim the Commissioner said: "Not only is this due to intoxication but it is due to provocation. I don't think the Workmen's Compensation Commission goes that far as to permit this type of going on. The question was very frequently, I asked if he hadn't been drinking would this have happened. The answer is, no."

In our appellate review we are guided in our consideration by certain statutory provisions and rules of law. We start with the general proposition: "In all court proceedings under [the Workmen's Compensation Law], the de-

cision of the Commission shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same." Code, Art. 101, § 56 (c). Section 15 of Art. 101 precludes compensation "* * * where the injury results solely from the intoxication of the injured employee while on duty * * *." But, "* * * it shall be presumed in the absence of substantial evidence to the contrary * * * [t]hat the injury did not result solely from the intoxication of the injured employee while on duty." Art. 101, § 64 (d).

The lower court found as a fact that appellant was injured as a result of a fight which occurred while he was on the job. It further found from the evidence before it that at the time appellant was injured he was intoxicated. We cannot say that these findings were clearly erroneous. The court then reached the crux of the case — whether the intoxication was the sole cause of the injury. It said:

> "[I]t is conceded by the claimant here through argument of counsel that there was evidence that the present accident would not have happened, or the fight would not have occurred had Mr. Zentz not been drinking. This is conceded, but in any event there was evidence which would support a finding that the drinking caused the argument and the fight.
>
> So the refinement of the question is that if Mr. Zentzs' drinking brought about a state of mind which caused him to fight and initiate this altercation, and there is evidence that it was he who initiated the altercation, I think this would defeat his claim that the injuries were not caused solely by the intoxication. I am referring to some testimony by Mr. Mishenko, in which the Commissioner asked Mishenko * * * 'If you hadn't been drinking, do you think you would have been fighting?'—I think the word 'you' was used collectively, and the answer was, 'No, sir.' And the same question was asked again, and this time

in answer to the question Mishenko said, 'No, sir. I don't think so. He [Zentz] would have never run his mouth if he hadn't been drinking.'

I realize we have a close question of law here, but under all of the circumstances I do not find that the Commissioner was wrong in his findings of fact or application of law to those facts, and for that reason I will affirm the Commission by finding in connection with the one issue before me that the intoxication was the sole cause of the injury. * * *"

We think there was evidence legally sufficient to support that determination. The ultimate decision is confided to the Commission and "* * * its determination is final and is not to be reversed by the courts if there was before it evidence legally sufficient to support that determination, even though a contrary finding reasonably could have been made and even if the reviewing court, had the choice been its to make, would have made it." *Martin Marietta Corporation et al. v. Leius,* 237 Md. 217, 220.

The answer to the first question presented by appellant on appeal to this Court is that the lower court did not err in finding that the sole cause of his injuries was his intoxication. To hold that where intoxication and the hazards of employment concur the claimant *must* prevail, would be to render the statute meaningless. The Court of Appeals said in *Smith v. State Roads Commission,* 240 Md. 525, 535: "[I]f the employment does no more than supply the setting, the stage or the situation in which the injury occurs, if it is no more than an inactive condition and not a moving cause, compensation must be denied. Concurrence of intoxication and the setting, alone, is not enough. There must be in addition, if compensation is to be awarded, some active or moving or contributing cause." Appellant argues that the contributing cause here were the blows struck by Mishenko. We do not find them to be so within the meaning of *Smith.* The lower court found,

and we think properly so, that had appellant not been intoxicated there would have been no fight. Had there been no fight he would not have been injured. Thus the injuries were the result of the intoxication and a determination that the injuries were due solely to the intoxication is not clearly erroneous. In other words since the lower court and the Commission reached the conclusion on the evidence that appellant's injuries were the result of the fight and the fight was owing to his drunkenness, compensation was properly denied.

Appellant's second question raises § 67 (6) of Art. 101 wherein "accidental personal injury" includes "an injury caused by the wilful * * * act of a third person directed against an employee in the course of his employment." This was not an express issue either before the Commission or the lower court. In any event that an injury within the meaning of the Act includes that caused by the wilful act of a third person does not preclude a finding on legally sufficient evidence, as here, that the sole cause was the claimant's intoxication.

As to the third question presented, we do not find that the lower court or the Commission assigned erroneous reasons to disqualify appellant. The Commission's statement: "Not only is this due to intoxication but it is due to provocation," may be reasonably construed only as meaning that if appellant had not been drunk there would have been no fight. And if the lower court did to some extent apply *Scherr v. Miller,* 229 Md. 538, although it was careful to point out that *Scherr* was not apposite on all points, which application may have been inappropriate in the light of *Giant Food, et al. v. Gooch,* 245 Md. 160, such application did not make the final determination of the issue wrong. We note that the court expressly found that appellant was injured as a result of a fight "which occurred while he was on the job" and thus in the course of his employment. And we note further that in deciding that the intoxication was the sole cause of the injury, the court said it relied "upon the standard set forth by the Court of Appeals in *Smith v. State Roads*

*Commission, supra,* at pp. 534-535." And, contrary to appellant's assertion on appeal, we do not believe that either the Commission or the lower court based its disallowance of the claim on the ground that the injury was "occasioned by the wilful intention of the injured employee to bring about the injury." See Art. 101, § 15.

With regard to the fourth question presented by appellant we see no "immaterial and extraneous findings, 'misconstru[ction] * * * of the law and facts,' within the meaning of Article 101, Section 56 and unsupported by any substantial evidence on the record as a whole * * *," by the lower court or the Commission. There being none, no ground for reversal is thereby provided.

In short, none of the contentions of appellant raised under the questions presented provide grounds for reversal of the judgment. We find that there was "substantial evidence" to overcome the presumption that appellant's injuries did not result solely from his intoxication. We further find, giving due consideration to the mandate that the decision of the Commission was *prima facie* correct with the burden of proof on appellant to show otherwise, that the lower court's judgment on the evidence was not clearly erroneous.

> *Judgment affirmed; appellant*
> *to pay costs.*