641 A.2d 924

MARYLAND CASUALTY COMPANY, et al.

v.

Albert J. LORKOVIC.

No. 1558, Sept. Term, 1993.

Court of Special Appeals of Maryland.

June 1, 1994.

336

Michael A. Brown (Daniel R. Lanier and Miles & Stockbridge, on the brief), Baltimore, for appellants.

Peter M. Callegary (Callegary & Callegary, on the brief), Baltimore, for appellee.

Argued before BISHOP, DAVIS and MOTZ, JJ.

DAVIS, Judge.

This is an appeal from a September 10, 1993 order of the Circuit Court for Baltimore County granting summary judgment in favor of appellee, Albert J. Lorkovic. The dispute arose from Lorkovic's claim for workers' compensation, filed September 13, 1990, against his employer, the Maryland Casualty Company (Maryland Casualty), and insurer, the Automobile Insurance Company of Hartford (collectively appellants). The basis of the workers' compensation claim was injuries Lorkovic sustained in a one-car accident while he was driving home from the airport after a business trip. Appellants contested Lorkovic's claim on grounds that his injuries did not arise from or occur in the course of his employment and that his intoxication was the sole cause of his injuries.

On April 17, 1992, a hearing was held before the Workers' Compensation Commission. On June 23, 1992, the commission issued an order denying Lorkovic's claim because he "did not sustain an accidental injury arising out of and in the course of employment ... and the disability of the claimant is not the result of the alleged accidental injury...."

On July 22, 1991, Lorkovic noted an appeal with the Circuit Court for Baltimore County, alleging that the commission "misconstrued the law and facts applicable to [his] case." On May 25, 1993, Lorkovic filed a motion for summary judgment. Because the motion was filed the same day trial was to begin, the circuit court heard oral argument regarding the summary

judgment motion.[1] Appellants submitted a trial memorandum delineating their positions.

A complete transcript of the Commission hearing was part of the record before the circuit court. Indeed, Lorkovic's attorney stated, "[W]e'll be basically submitting with the record below." Appellees' counsel, however, requested an opportunity to cross-examine Lorkovic on several points. The court granted this request and Lorkovic testified on direct examination and, subsequently, cross-examination.[2]

---

1. In *Bits "N" Bytes Computer Supplies, Inc. v. Chesapeake & Potomac Tel. Co.*, 97 Md.App. 557, 576 n. 9, 631 A.2d 485 (1993), this Court underscored the principle that "[a]lthough a motion for summary judgment can be made at any time in a proceeding when it appears that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, *Myers v. Montgomery Ward & Co.*, 253 Md. 282, 289–90, 252 A.2d 855 (1969), a party is ordinarily entitled to 15 days to respond to a summary judgment motion. *See* MD. RULE 2–311(b)." Like *Bits "N" Bytes*, this time period was not shortened by order of court, MD.RULE 1–204, yet appellants were not given time to prepare a response to the motion Lorkovic filed the day of trial. Appellants did not assert to the trial court or to this Court that summary judgment was improper for that reason. Indeed, the transcript indicates that appellants were confident that their trial memorandum would adequately address the issues at hand. Thus, the question is not before us.

2. Although an extensive analysis of the scope of appellate review of a Workers' Compensation Commission decision is not warranted, it should be pointed out that historically appellate review has included the record of the Commission proceedings. In *General Motors Corp. v. Bark*, 79 Md.App. 68, 79, 555 A.2d 542 (1989), Judge Moylan assiduously reviewed the circuit court's review of a Commission decision (under the then-applicable Workers' Compensation Act codified as Maryland Code, Article 101) and found that it was "essentially *de novo.*" Judge Moylan stated, "Relying upon the Commission record alone, relying upon that record as supplemented by live testimony, or relying entirely upon new evidence are equally legitimate ways of proceeding upon appeal at the circuit court level." *Id.* at 81, 555 A.2d 542.

Since *General Motors Corp.*, the Workers' Compensation statute has been modified and recodified. Appeals from a decision of the Commission is now in accordance with Subtitle B of the Maryland Rules (which have subsequently been rescinded and recodified with some changes and additions at Rule 7–201 through 7–210). MD.LAB. & EMPL.CODE ANN. § 9–737 (1991). This change is not material, however, to an appellant's right to rely on, wholly or partially, the Commission's record. In *County Federal Sav. and Loan Assoc. v. Equitable Sav. and Loan Assoc.,*

On August 18, 1993, the circuit court issued its opinion, finding that the commission erred in denying Lorkovic's claim and granted summary judgment in favor of Lorkovic. On September 10, 1993, appellants noted an appeal to this Court and presented the following issues:

I. Whether the circuit court erred in overturning the workers' compensation commission's ruling that Lorkovic's injury [did not arise] out of and in the course of his employment

II. Whether the circuit court erred in holding that Lorkovic's intoxication was not the sole cause of his injury

## FACTS

On August 17, 1990, Lorkovic was injured in a one-car accident when he was driving his Ford Bronco from the Baltimore–Washington International Airport to his home in Glennville, Pennsylvania. Lorkovic was returning from a business trip in California at the time. Lorkovic claims that his injuries are compensable under the Workers' Compensation Act. The nature of this appeal requires a close examination of Lorkovic's employment conditions as well as the facts surrounding his accident.

At the time of the accident, Lorkovic was 39 years old and was an assistant vice president and director of property claims at Maryland Casualty. His responsibilities required him to travel throughout the United States approximately twenty percent of his work time. Lorkovic generally made the decision when circumstances required that he travel, but he was

---

*Inc.*, 261 Md. 246, 256, 274 A.2d 363 (1971), the Court of Appeals has reviewed subtitle B of the Maryland Rules and concluded that "the circuit court on appeal should, in reaching its judgment, take into consideration the evidence (the record) before the Board, together with the evidence presented at the *de novo* hearing." *See also* RICHARD P. GILBERT AND ROBERT L. HUMPHREYS, JR., MARYLAND WORKERS' COMPENSATION HANDBOOK 342–43 (2d ed. 1993) ("When a case is submitted to the trial judge on the basis of the record made before the Commission, the judge reads the record and makes his or her decision according to what the judge perceives the record to reveal.").

often required to leave with short notice to investigate sudden property damage or take part in a legal settlement.

Although the record is scant regarding Maryland Casualty's policy of reimbursing Lorkovic for his travel expenses, the Commission record manifests that Lorkovic was reimbursed for "[t]he mileage as well as airline and everything was paid for by the company."[3] No mileage expense was permitted, however, for trips between his home and office. He also testified that he was not required to use his own vehicle to get to and from the airport (he could have used any means within reason) but that he did so because there was no public transportation where he lives.

Lorkovic testified that he was suffering from lupus disease and "Raynaud's disease" at the time of his accident. Neither diagnosis is directly supported by medical evidence in the record. Examinations made of Lorkovic after his accident revealed that his lupus diagnosis may be incorrect and that he may actually suffer from a form of arthritis. In addition, the Maryland Institute for Emergency Medical Systems' discharge summary states that Lorkovic developed pain in his right wrist and left knee—the knee pain was diagnosed as gout. No medical evidence was presented by either party affirmatively connecting Lorkovic's gout to the knee pain he allegedly experienced while on his trip.

Lorkovic states in his brief that the Raynaud's disease "cause[es] occasional sharp constriction of blood vessels, often painfully in the extremities." In addition he quotes DORLAND'S ILLUSTRATED MEDICAL DICTIONARY which describes Raynaud's disease as "intermittent attacks of severe pallor of the fingers or toes and sometimes the ears and nose, brought on charac-

---

**3.** The statement of facts in appellants' brief reads: "When Lorkovic did use his car for business matters, he was reimbursed by Maryland Casualty." Appellants' citation to the record extract is to a deposition of Lorkovic taken on February 15, 1993. It is not immediately apparent whether this deposition was ever entered into the record below. Nonetheless, Lorkovic's deposition testimony serves only to reinforce his Commission testimony that Maryland Casualty reimbursed him for travel expenses on a per mile basis.

teristically by cold and sometimes emotion." Lorkovic also states that his lupus condition causes pain in the joints. Lorkovic's brief asserts that he takes medication (Darvocet and Prednisone) for lupus and Raynaud's disease. Nonetheless, the record is clear that he only took Darvocet with him on his trip, that he had only a limited supply, and that he had no pills left by the evening prior to his return trip.

Lorkovic testified that he had knee pain during his business trip and as a result he could not sleep at night. He states that he slept "maybe an hour, an hour and a half" per night. He testified that he would elevate his feet and spend the night watching television or reading. Additional pertinent testimony was as follows:

Q [counsel for Lorkovic] You were in these meetings—can you tell me a little bit about your physical condition at the time in 1990.

. . . . .

A [Lorkovic] Generally when I go on a business trip I get there, I will rent an automobile to drive to and from. Prior to leaving I was having problems with my left knee, which was swollen up. I could hardly walk. So, I took some Darvocet with me. I am usually on or had been on Prednisone.

Q How long have you had this condition as being diagnosed as [l]upus?

A Probably since 1984

. . . . .

Q Were you able to sleep while you were on vacation normally?

A No, sir.

Q Not on—

A I was on—

Q On a business trip?

A I would sleep maybe an hour, an hour and a half at night, and—

. . . . .

Q Driving from the airport tell me what happened?
A ... I was driving down that, and I recall rolling the window down to get some air into the car because I was— felt like I was going to fall asleep or sleepy....

. . . . .

Q How much sleep had you had the previous night, if any?
A Probably a couple of hours.
Q Okay. What time did you go to bed?
A I would anticipate somewhere around 3 o'clock in the morning California time.

. . . . .

Q What time did you wake up?
A I believe I had a wake-up call for 5:00 or 6:00.

. . . . .

Q [cross-examination] ... What did you do on the plane? Did you sleep?
A I don't recall. I believe I slept though.

There is no dispute that Lorkovic conducted his employer's business during his trip to California. It is also undisputed that on the evening of Thursday, August 16, 1990, when his business was completed, Lorkovic spent time with a friend that included having "several drinks at one or two bars." Lorkovic did not return to his room until after 2:00 a.m. and, although he does not remember how many drinks he had, Lorkovic admits he was drunk when he got to his hotel room.

Lorkovic had a 7:30 a.m. flight that Friday morning, so he requested a wake-up call. He slept about three hours that night and was apparently not bothered by pain. He boarded the 7:30 a.m. flight back to Baltimore but does not remember whether he slept or drank alcohol during the flight. At one point in his testimony he did state that he believed he slept on the flight home.

Lorkovic arrived in Baltimore between 3:30 and 4:00 p.m. Baltimore time; thereafter, he secured his car and began the approximately 60–mile drive to his home. The parties have stipulated that no vehicle defect, tire trouble, or defect in the roadway in any way caused or contributed to the happening of the automobile accident, and that the accident occurred as described in the motor vehicle accident report completed by the Baltimore County Police Department.[4] Lorkovic testified that he thought about stopping at his office, which was on the way home, but chose not to because he was wearing jeans. He exited Middletown Road off of Route 83 and recalls that he had the air conditioner on and he decided to open the window to get some air in the car because he "felt like [he] was going to fall asleep...." The next thing he remembers was that his car was off the road and his side mirror hit a fence pole.

Lorkovic was taken to shock trauma at the University of Maryland Hospital. The University of Maryland toxicology examination of Lorkovic, based on specimens taken more than an hour and one-half after the accident, determined that he had a blood alcohol content of 206 mg/dl. The record contains a letter and attachments from Dr. Brent G. Petty which states that given Lorkovic's blood alcohol level, "it is probable that it impaired [his] judgment, coordination and response time while driving." The attached reference, a portion of 2 EMERGENCY MEDICINE CONCEPTS AND CLINICAL PRACTICE (Peter Rosen ed., 2d ed. 1988), states that blood alcohol concentrations of 150 to 250 mg/dl will cause lethargy [and] difficulty sitting upright without assistance," based on the occasional drinker. Chronic drinkers can, however, function at much higher alcohol concentrations because of tolerance. *Id.* On the other hand, patients may be comatose with low levels of alcohol in mixed alcohol-drug overdose situations. *Id.*

Maryland Casualty suggests that given Lorkovic's blood alcohol level after the accident, the level at which alcohol oxidizes in the blood (a rate of 13 to 25 mg/dl/hour in the

---

4. In addition, the parties stipulated to the admissibility of the motor vehicle accident report and the toxicology report.

nonalcoholic[5] ), and his statement that he is only a social drinker, he would either have had to drink on the plane or been near comatose the night before his flight home.

## LEGAL ANALYSIS

Maryland Casualty presents two arguments in support of its contention that the trial court erroneously overturned the decision of the Workers' Compensation Commission and granted summary judgment in favor of Lorkovic: (1) the court misconstrued the "coming and going" rule, and (2) it improperly resolved material facts in dispute.

## I

■ The Maryland Workers' Compensation Act provides benefits to persons who suffer "accidental injury that arises out of and in the course of employment." MD. LABOR & EMPL.CODE ANN. § 9–101(b)(1) (1991) [hereinafter the "Act"]. Injuries incurred by an employee while going to or returning from the work place do not ordinarily *arise out of and in the course of employment,* and are therefore not compensable under the Act. *E.g., Alitalia Linee Aeree Italiane v. Tornillo,* 329 Md. 40, 44, 617 A.2d 572 (1993); *Wiley Mfg. Co. v. Wilson,* 280 Md. 200, 206, 373 A.2d 613 (1977); *Saylor v. Black & Decker Mfg. Co.,* 258 Md. 605, 607–08, 267 A.2d 81 (1970). This general rule has been termed the "going and coming rule." *Alitalia,* 329 Md. at 44, 617 A.2d 572.

The Court of Appeals has "engrafted" onto the going and coming rule several exceptions:

1. "[W]here the employer furnishes the employee free transportation to and from work, the employee is deemed to be on duty, and an injury sustained by the employee during such transportation arises out of and in the course of employment. *Tavel v. Bechtel Corp.,* 242 Md. 299[, 219 A.2d 43] (1966); *Rumple v. Henry H. Meyer Co.,* 208 Md. 350, 357[, 118 A.2d 486] (1955).

---

**5.** EMERGENCY MEDICINE CONCEPTS AND CLINICAL PRACTICE, *supra.*

2. "Compensation may also be properly awarded where the employee is injured while traveling along or across a public road between two portions of the employer's premises. *Wiley Mfg.*, 280 Md. at 206[, 373 A.2d 613]; *Proctor–Silex v. DeBrick*, 253 Md. 477, 482[, 252 A.2d 800] (1969).

3. "The 'proximity' exception allows compensation for an injury sustained off-premises, but while the employee is exposed to a peculiar or abnormal degree to a danger which is annexed as a risk incident to the employment. *Pariser Bakery v. Koontz*, 239 Md. 586, 591[, 212 A.2d 324] (1965); *see M[aryland] Paper Products Co. v. Judson*, 215 Md. 577, 584–588[, 139 A.2d 219] (1958).

4. "Injuries incurred while the employee travels to or from work in performing a special mission or errand for the employer are likewise compensable. *Reisinger–Siehler Co. v. Perry*, 165 Md. 191, 199[, 167 A. 51] (1933); *see Dir[ector] of Finance v. Alford*, 270 Md. 355, 359–364[, 311 A.2d 412] (1973)."

*Alitalia*, 329 Md. at 44, 617 A.2d 572.

5. The "own-conveyance" exception applies where the employee is required to furnish his/her own vehicle for work and is injured while driving to or from the job.

*Id.* at 47, 617 A.2d 572.[6]

In the present case, a review of each exception is not required because Lorkovic asserts only that the "free transportation" and "own-conveyance" exceptions are applicable[7].

---

**6.** Two additional exceptions have been recognized by this Court, the "employer conveyance" exception and the "dual purpose" exception. *Alitalia v. Tornillo*, 91 Md.App. 191, 200, 203, 603 A.2d 1335 (1992), *aff'd*, 329 Md. 40, 617 A.2d 572. The Court of Appeals's review of exceptions to the coming and going rule did not mention these two exceptions, 329 Md. at 44, 617 A.2d 572, and they are not implicated by this appeal.

**7.** Without specifically asserting that he is arguing for a new exception should none of the established exceptions apply, Lorkovic provides what he considers "other circumstances which may be considered in the context of the rule." Because the free transportation exception is

As expected, appellants assert that none of the applicable exceptions apply.

■ We shall conclude that this case comes within the free transportation exception.[8]

**A**

Judge Wilner (now Chief Judge), speaking for the Court, assiduously reviewed the free transportation exception in *Ryan v. Kasaskeris,* 38 Md.App. 317, 381 A.2d 294 (1977). Because of the level of detail in that opinion and the lack of substantial development in case law regarding the free transportation exception, we shall only review the more important

---

applicable we need not consider whether any additional exceptions are warranted.

**8.** We conclude that the own-conveyance exception is inapplicable to the instant facts because the facts do not indicate that Lorkovic was "required to furnish" his own vehicle for work. The undisputed facts of this case indicate that Lorkovic could have chosen other means of transportation to the airport. Lorkovic testified that no public transportation was available, but he provided no evidence that he could not have taken a taxi or airport limousine. In his brief, he asserts parenthetically, and for the first time that we are aware, that taking a taxi is "an expense which the company *might* not approve on a *regular* basis, in any event." (Emphasis added).

In addition we think it important to note that the trial judge's opinion, while not specifically mentioning the free transportation exception, was most likely applying it in reality, and not the own-conveyance exception stated in *Alitalia.* The lower court opinion reads, in pertinent part:

Maryland Casualty contends that the case *sub judice* is distinguishable from *Alitalia* in that here Lorkovic had an option to use public transportation. That contention is irrelevant. Certainly in *either* of these cases the employee could have elected, most likely at their own expense, to travel in taxicabs while on company business. *The relevant point is that in both situations it was agreed company policy that the employee make his own vehicle available for work-related use, for which the employer would then reimburse him.* It was this policy of subsidizing the employee's use of his vehicle in the performance of his duties which constituted the "requirement" spoken of in *Alitalia.* [Emphasis added].

In our view, the trial judge's approach, while ultimately correct, brought him into a wholly separate exception—that of free transportation.

cases covered in *Ryan.* We continue to be mindful of the warning set forth in *Miller v. United Rys. & Elec. Co.,* 161 Md. 404, 407, 157 A. 292 (1931):

It is only the simple direction of the statute that is being applied to each set of facts, and there is danger that in following the lead of resemblances in the facts of decided cases we may use them as stepping stones to foreign ground.

The *Ryan* Court began with the inauguration of the free transportation rule in *Harrison v. Central Constr. Co.,* 135 Md. 170, 108 A. 874 (1919). In that case, the claimant lived in Baltimore and worked in Magnolia. As part of his employment contract, the employer furnished claimant with a "button" that entitled him to free train rides to work. One day, the claimant mistakenly boarded what he thought, and was told, was the "work train." Realizing his mistake, claimant exited the train and switched to the work train. While boarding the work train, claimant was injured. Relying on other jurisdictions, the Court stated:

When the injury occurs before the beginning or after the termination of work there are two general rules applicable to the question as to whether it arose out of and in the course of the employment. The first is that an employee, while on his way to work, is not in the course of employment. The second is that where the work[er] is employed to work at a certain place, and as part of his contract of employment there is an agreement that his employer shall furnish him free transportation to or from his work the period of service continues during the time of transportation, and if an injury occurs during the course of transportation it is held to have arisen out of and in the course of employment.

*Harrison,* 135 Md. at 177–78, 108 A. 874, *quoted in Ryan,* 38 Md.App. at 321, 381 A.2d 294.

Based on the free transportation theory, the Court held that it was error for the lower court to have ruled, as a matter of

law, that the injury did not arise out of and in the course of claimant's employment. *Harrison*, 135 Md. at 180, 108 A. 874.

In *Heaps v. Cobb*, 185 Md. 372, 384, 45 A.2d 73 (1945), the Court of Appeals made it clear that the *furnishing* of free transportation does not require that the employer supply the vehicle; it is sufficient that the employee substitute his own vehicle. *Ryan*, 38 Md.App. at 323, 381 A.2d 294; *see also Watson v. Grimm*, 200 Md. 461, 469, 90 A.2d 180 (1952).

The *Ryan* Court next addressed *Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947), a leading case in Maryland's development of the free transportation rule. That case involved the District of Columbia Workmen's Compensation Act. The employee was an electrical contractor who lived in the District of Columbia and worked in the metropolitan area. At one point, he was transferred to work a project at Quantico, Virginia. The applicable union contract required the employer to furnish "transportation and any necessary expense such as board and lodging . . . for all work outside the District of Columbia." *Id.* at 472, 67 S.Ct. at 804. An agreement was reached whereby the employer would meet this contractual obligation by paying employees working outside the District of Columbia two dollars a day as a transportation expense, the estimated cost of travel between the District of Columbia and Quantico, in lieu of the employer actually furnishing transportation.

Public transportation was not feasible, so the claimant car pooled with other employees. The employees each drove separate cars to a central point, and one employee drove the remaining distance. On the day in question, the employee was driving his car, with other members of the car pool aboard, when a stone propelled through the windshield from a passing truck fatally injured the employee. The District of Columbia Compensation Commission found that the injury arose out of and in the course of employment and awarded benefits.

After appeals to the District Court and the Circuit Court, the Supreme Court granted certiorari. Speaking to the free transportation exception, the Court stated:

To be sure, there are many holdings to the effect that, where the employer merely pays the costs of transportation, an injury occurring during the journey does not arise out of and in the course of employment; there must be something more than mere payment of transportation costs. But assuming those holdings [which were cited in a footnote] to be correct and assuming the Deputy Commissioner's findings in this case to be justified, there is more here than mere payment of transportation costs. It was found that Ticer's employer paid the costs as a means of carrying out its contract obligation to furnish the transportation itself. *Where there is that obligation*, it becomes irrelevant *in this setting* whether the employer performs the obligation by supplying its own vehicle, hiring the vehicle of an independent contractor, making arrangement with a common carrier, reimbursing employees for the cost of transportation by any means they desire to use. In other words, *where the employer has promised to provide transportation to and from work*, the compensability of the injury is in no way dependent upon the method of travel which is employed. *Id.* at 482–83, 67 S.Ct. at 808–10 (emphasis added) (footnote omitted), *quoted in Ryan*, 38 Md.App. at 325–26, 381 A.2d 294.

Judge Wilner, speaking for the Court, held that "[t]he key to compensability . . . was the underlying contractual commitment to furnish the transportation, not the mere reimbursement of transportation expenses." *Ryan*, 38 Md.App. at 326, 381 A.2d 294. The next important case in the line of cases reviewed in *Ryan* was *Watson v. Grimm*, 200 Md. 461, 90 A.2d 180 (1952). There, the claimant's decedent, Watson, was a helper for Grimm, a self-employed garbage collector for the City of Hagerstown. Watson was paid fifty dollars per month and board and lodging on Grimm's farm. Typically, Grimm and Watson would drive the garbage collection truck into Hagerstown to work, stopping on the way to pick up two helpers. Watson and the two helpers rode on the running boards alongside the truck.

On the day of Watson's accident, the crew finished their work about one mile from the center of town. Rather than

ride back to Grimm's farm, Watson and one of the helpers stated that they wanted to be let off downtown. While traveling downtown, Watson fell off the running board and sustained fatal injuries.

This Court found the holding in *Watson* very important because it weaved together the essential teachings of *Harrison, Heaps,* and *Cardillo. Ryan,* 38 Md.App. at 326, 381 A.2d 294. Specifically, the *Watson* Court concluded:

It is held by the overwhelming weight of authority that *where the employer agrees to provide transportation* for his employee to and from work, compensability of injury sustained during transportation is in no way dependent upon the method of travel employed.

*Watson,* 200 Md. at 469, 90 A.2d 180 (emphasis added), *quoted in Ryan,* 38 Md.App. at 326, 381 A.2d 294.

We further noted that the *Watson* Court was not squarely faced with the principle tacitly accepted by the Supreme Court in *Cardillo*—that mere payment of transportation costs would not suffice to establish coverage—but, rather was faced with an *implicit* agreement. *See Ryan,* 38 Md.App. at 327, 381 A.2d 294.

[T]he fact that for three years the employee lived on the employer's farm three miles away from the city, and the fact that the place where he finished work was often more than a mile from the center of the city, considered together with the other facts and circumstances in the case, warranted the finding of the Commission that the employment continued from the time he got on the truck until he got off.

*Watson,* 200 Md. at 469–70, 90 A.2d 180, *quoted in Ryan,* 38 Md.App. at 327, 381 A.2d 294.

The *Watson* Court further noted that "[i]t is generally accepted that the agreement of an employer to provide transportation for his employee *need not be express but may be implied from the nature, conditions and circumstances of the employment and the custom of the employer to provide transportation.*" *Id.* 200 Md. at 470, 90 A.2d 180 (emphasis added).

Finally, we juxtaposed two cases, *Tavel v. Bechtel Corp.*, 242 Md. 299, 219 A.2d 43 (1966) and *Western Elec. Co. v. Engleman*, 13 Md.App. 374, 283 A.2d 437 (1971), to demonstrate the principle that where an employer agrees to provide transportation by means of reimbursement of expenses, that payment must bear a relationship to "reasonable travel expenses." *Ryan*, 38 Md.App. at 326–28, 381 A.2d 294. In *Tavel*, the employee was paid $1.20 per day "travel expense" pursuant to a former collective bargaining agreement that was superseded by a new agreement that did not provide for "travel expenses." The $1.20 travel expense was also determined to have no "relationship whatever to either the cost of transportation or the time it took to go back and forth." The Court concluded that the $1.20 was purely a fringe benefit to attract workers from the District of Columbia area, and, therefore, "the employer did not furnish the means of transportation nor pay its equivalent." *Ryan*, 38 Md.App. at 327, 381 A.2d 294.

In contrast, the claimant in *Western Electric*, was a Baltimore-based "installer" for Western Electric. Under the applicable collective bargaining agreement, if an employee was assigned to work at another location within the range of daily travel the employer would either furnish transportation to the job site by assigning the employee to travel as a driver or passenger in a company car or would pay a "daily transportation expense allowance" and a "daily travel time allowance" and would not furnish the employee a company car. *Ryan*, 38 Md.App. at 327–28, 381 A.2d 294.

In *Western Electric*, the claimant car pooled with another employee in that employee's car, and was injured on the trip home from the work site. We held that compensability hinged on whether the two allowances bore a relationship to reasonable travel expenses; if they did, the case would fall within the free transportation exception. The Court concluded that Western Electric was obligated by agreement to provide transportation and made payments which bore a relationship to reasonable travel expenses; *Tavel* was therefore distinguished and the claimant was covered. *Id.* at 327–28, 381 A.2d 294.

From the foregoing case law, we are instructed to "look first and always to the employment relationship itself. What was the contract between the parties?" *Id.* at 329, 381 A.2d 294. In addition, we proceed mindful that in this context the Court of Appeals has stated that an agreement to provide, or to continue to provide, transportation "need not be express but may be implied from the nature, conditions and circumstances of the employment and the custom of the employer to provide transportation." *Watson*, 200 Md. at 470, 90 A.2d 180, *quoted in Ryan*, 38 Md.App. at 332, 381 A.2d 294.

Before we can address the issue of whether the free transportation exception is applicable, we must address two critical questions ignored by the parties: (1) was summary judgment appropriate on the issue of whether Lorkovic's injuries arose out of and in the course of his employment, and (2) can we affirm summary judgment on an exception not relied on by the trial judge when he granted summary judgment?

## B

The appellate courts of this state have often and recently discussed the pertinent standards governing review of an order granting summary judgment. *See Gross v. Sussex*, 332 Md. 247, 255–56, 630 A.2d 1156 (1993); *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737–39, 625 A.2d 1005 (1993); *Nixon v. State*, 96 Md.App. 485, 499–500, 625 A.2d 404 (1993); *Fairfax Savings, F.S.B. v. Ellerin*, 94 Md.App. 685, 703–04, 619 A.2d 141, *cert. granted*, 329 Md. 756, 621 A.2d 897 (1993); *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 94 Md.App. 225, 230–31, 617 A.2d 590 (1992); *Seaboard Sur. Co. v. Richard F. Kline, Inc.*, 91 Md.App. 236, 241–45, 603 A.2d 1357 (1992). Despite this plethora of important recent cases, neither party discusses or cites to them.

Maryland Rule 2–501 provides for the granting of summary judgment "on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." The summary judgment process is not intended to substitute for a trial but merely

provides a mechanism for determination of whether there exist material facts in dispute requiring a trial. *Foy v. Prudential Ins. Co.,* 316 Md. 418, 422, 559 A.2d 371 (1989).

Under the summary judgment rule a trial court determines issues of law and resolves no disputed facts. *Beatty,* 330 Md. at 737, 625 A.2d 1005. Appellate courts reviewing an order granting a motion for summary judgment must determine whether the trial court was legally correct. *Id.* A motion for summary judgment can be defeated by a showing that there is a genuine dispute as to a material fact by proffering facts that would be admissible into evidence. *Id.* "A material fact is one which 'will somehow affect the outcome of the case.'" *Seaboard Surety,* 91 Md.App. at 242, 603 A.2d 1357 (citing cases). *Accord Gross,* 332 Md. at 256, 630 A.2d 1156; *Nixon,* 96 Md. at 499, 625 A.2d 404; *Hartford Ins.* 94 Md.App. at 231, 617 A.2d 590. Conversely, "[a] dispute as to a fact 'relating to grounds upon which the decision is not rested is not a dispute as to a material fact.'" *Gross,* 332 Md. at 256, 630 A.2d 1156 (quoting cases).

Because of the paramount importance of disputed facts in the summary judgment process, "[w]hen a moving party has set forth sufficient grounds for summary judgment, the party opposing the motion must show with 'some precision' that there is a genuine dispute as to material fact." *Bond v. NIBCO, Inc.,* 96 Md.App. 127, 135, 623 A.2d 731 (1993) (*quoting Seaboard Surety,* 91 Md.App. at 243, 603 A.2d 1357) (emphasis omitted). A party opposing a motion for summary judgment "cannot rely on formal denials or general allegations." *Bond,* 96 Md.App. at 135, 623 A.2d 731. The party opposing summary judgment must offer "evidence upon which the jury could reasonably find [in his favor]." *Beatty,* 330 Md. at 738–39, 625 A.2d 1005.

The Court of Appeals has also recognized that ordinarily summary judgment is inappropriate when intent or motive are critical to the proof of a case. *Gross,* 332 Md. at 256, 630 A.2d 1156. Thus, the trial court would improperly usurp the fact finder's power if it resolved an issue of credibili-

ty on summary judgment. *Id.* (citing *Coffey v. Derby Steel Co.*, 291 Md. 241, 247, 434 A.2d 564 (1981)).

1

 In the instant context, the Court of Appeals has stated that "[e]ach case involving the coming and going rule and its exceptions must turn on its own particular facts." *Alitalia*, 329 Md. at 46, 617 A.2d 572. This does not mean, however, that a trial judge hearing a motion for summary judgment cannot determine as a matter of law that a case falls within an exception to the coming and going rule. On this point, the Court of Appeals stated in *Harrison*, 135 Md. at 180, 108 A. 874:

> The question as to whether an injury arose out of or in the course of the employment is ordinarily, like negligence or want of probable cause, a mixed question of law and fact; but when the facts have been ascertained and agreed upon by the parties, or are undisputed and there is no dispute as to the inferences to be drawn from the facts, the question becomes one of law and may be decided by the Court.

*Id. See also Tavel*, 242 Md. at 307, 219 A.2d 43 ("On the undisputed facts and any inference which may be drawn from them, we find, as a matter of law, that Tavel's injuries did not arise out of and in the course of his employment, but were sustained as a result of a common peril, to which all persons are exposed").

 Based on the foregoing statements of the pertinent summary judgment standard, we conclude that as a matter of law the free transportation exception is applicable. Lorkovic's injuries arose out of and in the course of his employment.

Appellants assert summarily in their brief that the free transportation exception would not apply in this case because "no evidence has been offered by Lorkovic and no contention has been made by Lorkovic that Maryland Casualty was required to provide free transportation for Lorkovic. The undisputed facts of this case also show that no free transportation was provided by Maryland Casualty to Lorkovic."

The record in this case clearly reflects that Maryland Casualty had obligated itself to provide for Lorkovic's transportation during his business trips, from the time he left his home until the time he returned to his home or place of business. It is undisputed that Maryland Casualty always reimbursed Lorkovic for the expenses of his business travel, including the cost of transportation to and from the airport. Indeed, the trial court found (in comparing the instant case to *Alitalia*), "The relevant point is that in both situations it was the agreed company policy that the employee make his own vehicle available for work-related use, for which the employer would then reimburse him." Appellants have not alleged that the amount Maryland Casualty reimbursed to Lorkovic was not related to his reasonable travel expenses.

■ Maryland Casualty's policy of reimbursing Lorkovic for expenses incurred during business travel and its history of reimbursing him specifically for mileage traveled from his home to the airport and return home is a sufficient "custom of the employer" to infer that Maryland Casualty agreed to provide transportation for Lorkovic at the time of his accident. *See Watson*, 200 Md. at 470, 90 A.2d 180; *Ryan*, 38 Md.App. at 332, 381 A.2d 294. This conclusion is also supported by the distinction drawn by Maryland Casualty between business travel and travel merely between home and office: Maryland Casualty did not pay for traveling expenses incurred between Lorkovic's home and the office. During business travel, therefore, Maryland Casualty clearly considered Lorkovic to be on the job and conducting Maryland Casualty business.

2

Having determined that the free transportation exception is applicable and that summary judgment was appropriate for that determination, we are faced with the question of whether we can affirm summary judgment based on that exception when the trial court's opinion relied on the own-conveyance exception announced in *Alitalia*, 91 Md.App. at 205, *aff'd*, 329 Md. at 41.

█ As a general rule, " 'appellate courts will not ordinarily undertake to sustain the judgment by ruling on another ground, not ruled upon by the trial court, *if the alternative ground is one as to which the trial court had a discretion to deny summary judgment.'* " *Three Garden Village LTD Partnership v. United States Fidelity and Guar. Corp.*, 318 Md. 98, 107–08, 567 A.2d 85 (1989) (quoting *Geisz v. Greater Baltimore Medical Ctr.*, 313 Md. 301, 314 n. 5, 545 A.2d 658 (1988); *see also Gross*, 332 Md. at 254 n. 3, 630 A.2d 1156; *Federated Dep't Stores, Inc. v. Thatch Le*, 324 Md. 71, 79, 595 A.2d 1067 (1991); *Heat and Power Corp. v. Air Prods. & Chems. Inc.*, 320 Md. 584, 591–92, 578 A.2d 1202 (1990). This principle is consonant with the rule that a trial judge has discretion to deny a motion for summary judgment so that a more complete factual record can be developed. *See A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 333 Md. 245, 262–63, 634 A.2d 1330 (1994); *Foy v. Prudential Ins. Co.*, 316 Md. 418, 424, 559 A.2d 371 (1989); *Metropolitan Mortgage Fund, Inc. v. Basiliko*, 288 Md. 25, 29, 415 A.2d 582 (1980). The federal appellate courts often affirm a trial court's grant of summary judgment on grounds not relied upon by the lower court. *E.g., Weiser v. United States*, 959 F.2d 146, 147 (9th Cir.1992); *Lussier v. Louisville Ladder Co.*, 938 F.2d 299, 301 n. 2 (1st Cir.1991); *Shah v. General Elec. Co.*, 816 F.2d 264, 270 (6th Cir.1987); *Cannon v. University of Health Sciences/The Chicago Medical Sch.*, 710 F.2d 351, 363 (7th Cir.1983); *see also* 10 C. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2716 at 658 (1983). We have observed that judicial interpretations of the federal rule are persuasive because the Maryland Summary Judgment Rule is derived from the federal rule. *Seaboard*, 91 Md.App. at 243–44 n. 2, 603 A.2d 1357; *see also Metropolitan Mortgage Fund*, 288 Md. at 27, 415 A.2d 582.

█ In the case *sub judice*, we have held that there were no disputes as to material facts and that Lorkovic was entitled to summary judgment as coming within the free transportation exception. Thus, the trial judge would have had no discretion in denying the motion on that ground. See Md. Rule 2–501(e) ("The court *shall* enter judgment in favor or

against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.") (emphasis added). Hence, the trial court had no "discretion to deny summary judgment" on this "alternative ground." *Three Garden Village LTD Partnership,* 318 Md. at 107–108, 567 A.2d 85. Moreover, the record concerning Lorkovic's status at the time of his accident was fully developed below. Lorkovic requested summary judgment based on the coming and going rule, and appellants' trial memorandum and joint appellate brief present a detailed analysis of all the known exceptions to the coming and going rule. *See A.J. Decoster Co.,* 333 Md. at 262–63, 634 A.2d 1330; *Foy,* 316 Md. at 424, 559 A.2d 371; *Metropolitan Mortgage Fund,* 288 Md. at 29, 415 A.2d 582. We, therefore, are not precluded from affirming summary judgment based on the free transportation exception, and we do affirm.

## II

The final issue for review is whether the trial court erred in determining that summary judgment was appropriate on the issue of whether Lorkovic's intoxication would bar his recovery under the Act.

We begin by examining the pertinent sections of the Act. Section 9–501 of the Act provides that regardless of fault, and except as otherwise provided, "each employer of a covered employee shall provide compensation . . . to . . . the covered employee for an accidental personal injury sustained by the covered employee." Section 9–506 delineates circumstances where compensation is prohibited, including where intoxication is the sole cause of the employee's injury. The pertinent language regarding intoxication is contained in subsections (c) and (e):

(c) **Intoxication.**—A covered employee or a dependent of a covered employee is not entitled to compensation or benefits under this title as a result of an accidental personal injury

... caused solely by the intoxication of the covered employee while on duty.

. . . . .

(e) **Presumption.**—In a proceeding on a claim for compensation, there is, absent substantial evidence to the contrary, a presumption that an accidental personal injury ...:

. . . . .

(3) was not caused solely by the intoxication of the covered employee while on duty.

Appellants assert that the trial court's grant of summary judgment on the issue of intoxication was error because intoxication was the sole cause of Lorkovic's accident or, alternatively, whether intoxication was the sole cause of Lorkovic's injuries was a question of material fact in dispute.

In his motion for summary judgment, Lorkovic asserted that despite the evidence of intoxication the appellants failed to meet their burden of (1) overcoming the presumption against intoxication and (2) disputing the material fact that Lorkovic's injuries were caused, at least in part, by his lack of sleep during his business trip, which, in turn, was caused by his health conditions.

The first question presented by the statute is whether the party raising the defense of intoxication has produced evidence sufficient to rebut the presumption against a finding that injury was caused solely by intoxication. In Maryland, once evidence tending to rebut a presumption is introduced, it must be determined whether "it is insufficient to be considered by the jury in rebuttal of the presumption," or whether it is "so conclusive that it shifts the burden or duty of going forward with the evidence back to the plaintiff." *Grier v. Rosenberg*, 213 Md. 248, 254–55, 131 A.2d 737 (1957). In the latter circumstances, the defendant may be entitled to a judgment as a matter of law if the plaintiff does not produce sufficient evidence in reply and the record does not already tend to contradict defendant's evidence. If the case falls in

between these two categories, the issue should be submitted to the jury. *Id.* at 255, 131 A.2d 737.

■■■ The evidence establishes that Lorkovic was suffering from sleep deprivation and intoxication when he began his drive home from the airport. In addition, Lorkovic's testimony established that he fell asleep at the wheel. Lorkovic surmises, therefore, that his sleep deprivation during his business trip was a proximate cause of his injuries. Appellants' evidence regarding Lorkovic's physical and mental abilities in his intoxicated state rebut Lorkovic's allegations of causation, but is not so conclusive to warrant a judgment as a matter of law. Based on appellants' evidence, a reasonable jury could find that Lorkovic fell asleep at the wheel solely based on his intoxicated state, *i.e.*, had Lorkovic not been intoxicated he would not have fallen asleep at the wheel. *Beatty,* 330 Md. at 738–39, 625 A.2d 1005; *see also Gross,* 332 Md. at 256, 630 A.2d 1156 (citing cases) ("all inferences must be resolved against the moving party when determining whether a factual dispute exists, even when the underlying facts are undisputed.").

Relying on *Smith v. State Roads Comm'n,* 240 Md. 525, 529, 214 A.2d 792 (1965) and *Zentz v. Peters & Taylor, Inc.,* 11 Md.App. 1, 272 A.2d 430 (1971), appellants urge this court to find, as a matter of law, that intoxication was the sole cause of Lorkovic's injuries. We decline to do so.

The case law relied upon by appellants is easily distinguishable. In *Smith,* 240 Md. at 529, 214 A.2d 792 (1965), the issue for review was "[w]hether or not the trial judge was clearly erroneous in concluding the death of Smith resulted solely from his intoxication. . . ." Smith, an employee of the State Roads Commission, struck a telephone pole at 8:00 p.m. on his way home from work and was fatally injured. The next morning an examination was made that revealed Smith had a blood alcohol concentration of "0.27%." The widow brought a claim for workers' compensation.

The Court noted that "the fact of intoxication, if not actually admitted, is established, for the first time in Maryland, by

evidence which is both overwhelming and unchallenged." *Id.* The State Roads Commission offered expert testimony on the likely effects of alcohol in this case. Additionally, there was testimony that appellant drank two glasses of beer at a tavern that afternoon and that there were six bars, saloons, or cocktail lounges on the portion of the roadway usually traveled by the employee. *Id.* at 530, 214 A.2d 792.

In contrast to this evidence, the claimant in *Smith* asserted that factors other than intoxication contributed to the accident: the road surface was damp, it was a dark and cloudy day, illumination was poor, it was hazy, excessive speed is indicated, the telephone pole was two feet east of the shoulder, and this was the fifth of a series of curves and some curves were double curves. It was also suggested that any number of things *could* have happened, such as Smith's having been blinded by on-coming lights, swerving to avoid an animal, being run off the road by an on-coming car, sneezing, or falling asleep. *Id.* at 530–31, 214 A.2d 792.

In undertaking to examine the foregoing assertions, the Court was immediately struck by the claimant's failure to substantiate her assertions, and stated that "[the claimant] might, with equal force, have argued that the road ran north and south instead of east and west, that the sun was not shining, that it was September instead of May." *Id.* at 531, 214 A.2d 792. Regarding the possibility, for example, that the employee may have fallen asleep, the Court found that "the record is devoid of evidence [that he fell asleep.] Indeed, to quote from the claimant's brief, 'The exact factor that caused him to run off the road is a matter of strict conjecture.'" *Id.* at 533, 214 A.2d 792.

The case *sub judice* is distinguishable from *Smith* in that Lorkovic has offered his own sworn testimony that he had a loss of sleep while on his business trip and, therefore, fell asleep on the way home.

Similarly, appellants' reference to *Zentz,* 11 Md.App. at 1, 272 A.2d 430, is unpersuasive. In that case, the Court held that the circuit court's finding that claimant's injuries sus-

tained in an altercation at work were caused solely by his intoxication was not clearly erroneous because the evidence clearly established that the altercation would not have occurred absent claimant's intoxicated state of mind. *Id.* at 6–9, 272 A.2d 430. In the case *sub judice*, whether Lorkovic's lost sleep was a contributing cause to his falling asleep at the wheel is a material fact in dispute. Resolution of this dispute is not within this Court's authority.

## III

Finally, we address Lorkovic's contention that appellants violated MD.RULE 8–501(h) by failing to provide a table of contents for their record extract and his suggestion that appellants violated MD.RULE 8–206(d) by including their own pretrial information report in the record extract.

■■■ Maryland Rule 8–501(m) states that "[o]rdinarily, an appeal will not be dismissed for failure to file a record extract in compliance with this Rule." Lorkovic has not asked for dismissal of this appeal based on that ground, and we do not find that this case is extraordinary. Nonetheless, appellants' failure to provide a table of contents was certainly an inconvenience for this Court and Lorkovic, and it is worthy of admonishment. We sincerely hope and expect that the appellants' attorneys will not make this their regular practice.

Appellants' violation of Rule 8–206(d) is much more serious and disturbing. In *Seidel v. Panella*, 81 Md.App. 124, 130–31, 567 A.2d 134 (1989), we addressed circumstance in which an appellee attached a copy of the appellants' Rule 8–205 pre-hearing information report to its brief. We stated that "[s]uch conduct was an egregious breach of confidentiality and a blatant violation of Rule 8–206(d). We are inclined to award sanctions, but are unable to do so without a precise statement of the attorneys' fees incurred while responding to the motion to dismiss."

In the case *sub judice*, unlike *Seidel*, the pretrial information report included in the record extract is the appellants. Nonetheless, the potential for harm is just as great, since

information in appellants' report could very well contain information regarding the appellee. Indeed, the report form itself states that it is a confidential document. Because Lorkovic has not asked for sanctions, perhaps out of graciousness, we decline to consider imposing any in this case.

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**